DRESSLER COAL COMPANY, APPELLANT, *v.* DIVISION OF RECLAMATION, OHIO DEPARTMENT OF NATURAL RESOURCES, APPELLEE.

[Cite as Dressler Coal Co. *v.* Div. of Reclamation (1986), 23 Ohio St. 3d 131.]

(No. 85-124—Decided April 23, 1986.)

*Stubbins, Phillips & Co., L.P.A., Brent A. Stubbins* and *Mark W. Stubbins,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Bryan F. Zima,* for appellee.

*Per Curiam.* In the cause *sub judice,* there is little doubt that appellant made an agreement with MVA, whereby MVA would continue the mining operations and perform reclamation activities under the license No. B-0319 procured by appellant. Nevertheless, the crucial question posed in this cause is whether appellant should be held responsible for the alleged reclamation violations committed by MVA under appellant's license No. B-0319.

Appellant contends that responsibility for reclamation violations must be imposed upon the "operator" who actually committed the alleged violations. Appellant argues that the board erred in not adopting the "responsi-

ble operator" test formulated in *Affinity Mining Co., Keystone No. 5 Mine* (1973), 2 IBMA 57, 80 I.D. 229; *Armco Steel Corp.* (1976), 6 IBMA 64, 83 I.D. 77, and applied in *Bituminous Coal Operators' Assn.* v. *Hathaway* (W.D. Va. 1975), 406 F. Supp. 371; and thus hold MVA accountable for the alleged reclamation violations, since MVA performed the reclamation activities under appellant's strip mining license No. B-0319.

According to appellant, the test of who is a "responsible operator" is whether the operator is in a realistic position to prevent or abate the violation of the applicable strip mining laws with a minimum of due diligence. *Armco, supra.* Appellant also relies on *Marco, Inc.* (1981), 3 IBSMA 128, 88 I.D. 500, for the proposition that although a mining company may be the "permittee," if said permittee relinquishes its license to mine, undertakes no actual mining operations, and has no legal rights in the license area mined by the successor mine operator, then the permittee should not be held accountable for any reclamation violations committed by the successor mine operator.

After careful consideration and analysis of the cases heretofore cited, we decline to adopt the "responsible operator" test urged by appellant, and find the *Wilson Farms Coal Co.* case to be more persuasive under the facts of the instant cause.

In *Wilson Farms Coal Co., supra,* the Interior Board of Surface Mining and Reclamation Appeals found the holder of a surface mine permit to be responsible for violations committed on the permit area by another company to which the permittee had leased its mining rights, and transferred under such lease all obligations and responsibilities of the permittee, including compliance with state and federal laws. In reviewing the instant cause, we find that appellant continued to file documents (*i.e.,* quarterly reports of mining activities and the "Operator's Request to Amend Mining and Reclamation Plan") with appellee subsequent to appellant's private agreement with MVA. All of these documents were signed by Clarence Goss, the president of appellant. Assuming that appellee was fully aware of the fact that appellant made an agreement with MVA, whereby MVA continued to mine under appellant's license No. B-0319, it does not appear that appellant attempted to apprise appellee that it was transferring the rights and responsibilities under license No. B-0319 to MVA. In any event, we believe that there is sufficient credible evidence to indicate that appellee continued to view appellant as the responsible party for any and all activities carried out pursuant to license No. B-0319. The record clearly shows this to be the case, since appellant was listed as the "company" under license No. B-0319 in virtually all the "Inspector's Field Operation Report(s)" completed by the agents of the appellee.[2]

---

[2] The Inspector's Field Operation Report prepared in March 1974 listed MVA as the "company" under license No. B-0319; however, this was obviously done in error since all subsequent Inspector's Field Operation Reports listed appellant as the "company" under license No. B-0319.

As appellee points out, *Marco, Inc., supra,* is readily distinguishable from the cause *sub judice.* Unlike appellant herein, Marco, Inc. never undertook any mining operations under its license, and did not continue to take administrative actions under color of the license that were consistent with mining. In fact, Marco, Inc. undertook all the administrative steps necessary to relinquish its permit rights using the appropriate state form to accomplish this end.

Therefore, we affirm the decisions below holding that appellant is legally responsible for the notices of reclamation violations alleged to have occurred in the area in license No. B-0319.

With respect to the second appeal attempted by appellant where it requested an extension of abatement time before the board, we affirm the appellate court's decision that said second appeal was *res judicata.*

Appellant contends that the board's *sua sponte* dismissal of the second appeal, without a hearing, amounts to an unconstitutional deprivation of due process. Appellant further contends that a party need not file written objections to the hearing officer's report and recommendation in order to preserve its rights to an appeal on the merits.

We believe that appellant's arguments in this regard are unpersuasive. As set forth in the hearing officer's report and recommendation:

"'* * * The doctrine of *res judicata* provides that the judgment of a court of concurrent jurisdiction directly upon points of law or fact is conclusive between the same parties, or their privies, on the same matter in a separate action. *Columbus* v. *Union Cemetery Association* [(1976), 45 Ohio St. 2d 47 (74 O.O.2d 79)]. Where this doctrine applies it will preclude subsequent litigation not only as to matters actually determined, but also as to any other matters which could have been determined. *Charles A. Burton, Inc.* v. *Durkee* [(1954), 162 Ohio St. 433 (55 O.O. 247)]; 1B *Moore's Federal Practice,* Sec. [*sic* Par.] 0.405 (1), at pp. 621-624 (1965).

"At the outset, it is important to note that the doctrine of *res judicata* applies to administrative proceedings. [See] *Math* [*sic Naff*] v. *Sohio,* 527 F. Supp. 160 [, 163, at fn. 2] (S.D. Ohio 1980).

"'* * *

"For *res judicata* to apply, the first and second suit must be between the same parties or their privies and must be based upon the same cause of action. *Trautwein* v. *Sorgenfrie* [*sic Sorgenfrei*] [(1979), 58 Ohio St. 2d 493 (12 O.O.3d 403).]

"'* * *

"In the first suit, Appellant had the opportunity to raise issues regarding the abatement action and time required by notices of violation 2047 and 2048. I am aware that the actual denials of the request for extension of abatement time in question in case number RBR-4-83-007 were issued after the hearing of the first suit. However, issues regarding the reasonableness of the abatement time could have been raised in the first suit. Moreover, the Board in upholding notices of violation 2047 and 2048,

necessarily considered the abatement action as part of the Division's *prima facie* case. (See Decision of Board, item 7, Appendix 3.)"[3]

Hence, since the issue in the second appeal requesting an extension of abatement time was necessarily before the board in the first appeal determined by it, the doctrine of *res judicata* dispenses with the requirement of a *de novo* hearing on this issue. Thus, we need not rule upon appellant's due process and procedural arguments in this vein.

Therefore, based on the foregoing, the judgment of the court of appeals holding that the decisions rendered by the Reclamation Board of Review were neither arbitrary, capricious nor inconsistent with law, is hereby affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, WISE, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

WISE, J., of the Fifth Appellate District, sitting for LOCHER, J.

---

[3] Item 7 of the Reclamation Board of Review's findings and order in the first appeal states:

"7) The Board finds violations of the reclamation requirements as the testimony of Inspector Arnold and the exhibits admitted into evidence clearly show substantial erosion, with rills and gullies in excess of nine inches deep on the affected area. Rule 1501:13-7-06(A) provides that if the permittee fails to complete any phase of reclamation within the time required by the mining and reclamation plan, the Chief shall issue a notice of violation setting forth the nature of the failure, the remedial action required, and a reasonable time for completion of the reclamation phase. The Board, therefore, finds the existence of violations of reclamation requirements cited in NOV #2047 and #2048."