STANCOURT et al., Appellants and Cross–Appellees,

v.

WORTHINGTON CITY SCHOOL DISTRICT BOARD
OF EDUCATION, Appellee and Cross–Appellant.

[Cite as *Stancourt v. Worthington City School Dist. Bd.
of Edn.*, 164 Ohio App.3d 184, 2005-Ohio-5702.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–870.

Decided Oct. 27, 2005.

186

Stein, Chapin & Associates, L.L.C., Lance Chapin, Amanda K. Zibners, and Beth J. Nacht, for appellants and cross-appellees.

Bricker & Eckler, L.L.P., Nicholas A. Pittner, Susan E. Geary, and Jennifer A. Flint, for appellee and cross-appellant.

PETREE, Judge.

{¶ 1} Appellants and cross-appellees, Warren and Tammy Stancourt, appeal from a judgment of the Franklin County Court of Common Pleas related to an administrative appeal under R.C. 3323.05. Appellee and cross-appellant, Worthington City School District Board of Education, cross-appeals and moves to dismiss the instant appeal for lack of subject-matter jurisdiction. For the reasons that follow, we deny appellee's motion to dismiss this appeal, and we affirm in part and reverse in part the judgment of the common pleas court.

{¶ 2} This matter arises from appellee's purported violation of the Individuals with Disabilities Education Act ("IDEA"), Section 1400 et seq., Title 20, U.S.Code. In *Austintown Local School Dist. Bd. of Edn. v. Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities* (1993), 66 Ohio St.3d 355, 613 N.E.2d 167, the Supreme Court of Ohio described the IDEA as follows: ·

The Individuals with Disabilities Education Act ("IDEA"), Section 1400 *et seq.*, Title 20, U.S.Code, provides federal funding to assist state and local educational agencies in educating children with disabilities. The purpose of IDEA is "to assure that all children with disabilities have available to them

* * * a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, to assure that the rights of children with disabilities and their parents or guardians are protected, to assist States and localities to provide for the education of all children with disabilities, and to assess and assure the effectiveness of efforts to educate children with disabilities."

Id. at 360, 613 N.E.2d 167, quoting former Section 1400(c), Title 20, U.S.Code.

{¶ 3} "To qualify for federal assistance, states must enact policies and procedures which are consistent with IDEA requirements. * * * Ohio has done so through R.C. Chapter 3323. In addition, the State Board of Education has promulgated rules for the education of handicapped children under authority granted in R.C. 3323.03 and 3323.04." Id. (Footnote omitted.) See, generally, Ohio Adm.Code Chapter 3301–51.

{¶ 4} "Incorporated in R.C. Chapter 3323 is the purpose of IDEA: to provide handicapped children a free, appropriate public education tailored to the unique needs of each child by developing an IEP [individualized education program] which places the child in the least restrictive environment." Id. at 360, 613 N.E.2d 167, citing R.C. 3323.01(D) and (E), 3323.02, 3323.08(C); former Ohio Adm.Code 3301–51–02(E)(1)(d)(iv).

{¶ 5} According to the evidence, the Stancourts' minor son received special education services through the Worthington City School District. During the 2001–2002 academic year, when the Stancourts' son was in sixth grade, a dispute arose between the Stancourts and the school district concerning their son's individualized education program ("IEP"). Specifically, the Stancourts claim that the board of education violated the IDEA when it allegedly unilaterally changed their son's IEP, when it failed to comply with the IDEA's procedural safeguards, and when it allegedly misled the Stancourts concerning its intention to implement proposed changes.

{¶ 6} In January 2002, an IEP was created to address the educational needs of the Stancourts' son. Both the Stancourts and the school district agreed to the program contained in this IEP. Thereafter, three addenda, dated February 8, March 12,[1] and April 10, 2002, were added to the IEP of January 2002. The Stancourts claim that they never agreed to the addendum of April 10, 2002, when they met with school officials on April 10, 2002.[2] The Stancourts further claim

---

1. According to the evidence, although Mr. Stancourt consented to the addendum of March 12, 2002, he also indicated that he disagreed with a decision not to include socialization goals and objectives in the addendum.

2. To support their argument, the Stancourts appended to their appellate brief a transcript of the April 10, 2002 meeting with school district representatives. However, because this

that after the meeting of April 10, 2002, the school district failed to provide them with timely notice that changes in their son's IEP, which were based upon the addendum of April 10, 2002, had been implemented.

{¶ 7} On May 28, 2002, the Stancourts and representatives from the school district met to discuss an IEP program for the Stancourts' son for the next academic year. Three days later, the Stancourts filed for a due-process hearing; however, they later withdrew this request.

{¶ 8} On June 7, 2002, without the Stancourts in attendance, representatives from the school district met to discuss the Stancourts' son's IEP for the upcoming academic year. Following this meeting, the school district notified the Stancourts about the proposed IEP of June 7, 2002; however, the Stancourts did not consent to that IEP, and ultimately it was not implemented.

{¶ 9} On August 26, 2002, the Stancourts again requested a due-process hearing, claiming that the basis for this request was identical to the issues raised in their previous due-process-hearing request of May 31, 2002. In the May 31, 2002 request, the Stancourts stated:

> The reasons are the addendum, dated April 10, which Worthington Schools implemented without our consent or participation and the new IEP which has been drafted and which eliminates all reference to social skills needs. Also, the lack of a social skills goal and objectives in the current IEP.

{¶ 10} Pursuant to R.C. 3323.05(E), the Stancourts' complaint was referred to an impartial hearing examiner ("IHO"). The IHO concluded that the IEP of January 2002, with the addenda dated February 8, March 12, and April 10, 2002, constituted the Stancourts' son's IEP. During the proceedings before the IHO, an issue arose concerning the Stancourts' refusal to consent to release of their son's medical and mental-health-treatment records to the school district.

{¶ 11} After the Stancourts failed to comply with the IHO's order to grant release of their son's records, the school district moved the IHO to dismiss the matter with prejudice. In response, the Stancourts informed the IHO that they intended to grant the school district access to the requested records.

{¶ 12} In January 2003, after the Stancourts had failed to comply with the IHO's order to grant the school district access to the requested records, the school district again sought dismissal with prejudice of the Stancourts' action. Later, after the Stancourts retained legal counsel, the IHO granted a request for

---

transcript is not included in the certified record, we do not consider it in this appeal. See *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, paragraph one of the syllabus ("A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter"); see, also, App.R. 9(A) (composition of the record on appeal).

additional time to reply to the school district's request for dismissal. After receiving no response from the Stancourts or their legal counsel, the IHO dismissed the Stancourts' appeal with prejudice.

{¶ 13} Thereafter, the Stancourts appealed from the IHO's decision to the state board of education, which appointed a state-level reviewing officer ("SLRO") to consider their appeal. Finding that the IHO erred in dismissing the action with prejudice, the SLRO amended the IHO's order to a dismissal without prejudice, subject to reopening after the Stancourts complied with the order to grant the school district access to their son's records.

{¶ 14} The Stancourts then appealed from the SLRO's order to the Franklin County Court of Common Pleas. In common pleas case No. 03CVF–06–6746, the common pleas court dismissed the Stancourts' appeal because their notice of appeal failed to comply with mandatory requirements of R.C. 119.12.[3] However, in its decision filed October 31, 2003, the common pleas court also concluded that because the state board of education failed to fully comply with the procedural requirements of R.C. 119.09, the appeal period had not commenced and, as a consequence, appellants were not barred from filing a timely, proper notice of appeal. Appellee did not appeal from this judgment.

{¶ 15} On November 14, 2003, in case No. 03CFV–11–12578, the Stancourts again appealed from the SLRO's decision to the Franklin County Court of Common Pleas. In a judgment entry filed July 27, 2004, the common pleas court reversed decisions of the IHO and SLRO and remanded the matter with instructions to set a new hearing date. The common pleas court further found that the school district was entitled to the records that the Stancourts intended to offer at the hearings and to foundational materials relied upon by any expert that the Stancourts intended to call at the hearings. The common pleas court further found that a "stay-put" issue was not moot. The common pleas court also determined that the decision of the IHO to allow implementation of the April 2002 addendum was correct and that this addendum properly should be considered part of the Stancourts' son's IEP.

---

3. In a motion before the common pleas court filed February 6, 2004, appellee requested transfer of the administrative record filed in case No. 03CVF–06–6746 to case No. 03CVF–11–12578. By entry, the common pleas court granted appellee's motion. However, in this appeal, neither party has moved to supplement the record with the record of proceedings from case No. 03CVF–06–6746. See, generally, App.R. 9(A) (composition of the record on appeal). Although neither party has moved to supplement the record with the record of proceedings from case No. 03CVF–06–6746, we nonetheless take judicial notice of the common pleas court's final judgment entry and decision in that case. See In re Lassiter (1995), 101 Ohio App.3d 367, 374, 655 N.E.2d 781 (stating that an appellate court may take judicial notice of a court's finding in another case); Civ.R. 44.1(A)(1) ("Judicial notice shall be taken of the rules of the supreme court of this state and of the decisional, constitutional, and public statutory law of this state"); Evid.R. 201 (judicial notice of adjudicative facts).

{¶ 16} From the common pleas court's judgment of July 27, 2004, appellants appeal and appellee cross-appeals. Appellee also moves this court to dismiss the instant appeal for lack of subject-matter jurisdiction.

{¶ 17} In its motion to dismiss, appellee asserts that the common pleas court erroneously applied the procedural requirements set forth in R.C. 119.09 and, construing R.C. 3323.05, further asserts that appellants' appeal is untimely. Appellee therefore reasons that the common pleas court lacked subject-matter jurisdiction and, consequently, this court also lacks subject-matter jurisdiction.

{¶ 18} "Subject-matter jurisdiction is a court's power over a type of case. It is determined as a matter of law and, once conferred, it remains." *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, at ¶ 34; see, also, *Morrison v. Steiner* (1972), 32 Ohio St.2d 86, 61 O.O.2d 335, 290 N.E.2d 841, paragraph one of the syllabus ("Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon its merits"). Jurisdiction is a condition precedent to a court's ability to hear a case. *State ex rel. Tubbs Jones v. Suster* (1998), 84 Ohio St.3d 70, 75, 701 N.E.2d 1002. "If a court acts without jurisdiction, then any proclamation by that court is void." Id., citing *Patton v. Diemer* (1988), 35 Ohio St.3d 68, 518 N.E.2d 941. A jurisdictional defect cannot be waived, and it may be raised for the first time on appeal. *State ex rel. Tubbs Jones* at 75, 701 N.E.2d 1002; *Jenkins v. Keller* (1966), 6 Ohio St.2d 122, 35 O.O.2d 147, 216 N.E.2d 379, paragraph five of the syllabus. "[W]hen an appellate court determines that the trial court was without jurisdiction, it is not proper for the reviewing court to decide the merits of the case." *Eagle Fireworks, Inc. v. Ohio Dept. of Commerce*, Washington App. No. 03CA28, 2004-Ohio-509, 2004 WL 232869, at ¶ 7.

{¶ 19} Appellee's motion to dismiss the instant appeal challenges the propriety of the common pleas court's rulings in case No. 03CVF–06–6746. However, the judgment in case No. 03CVF–11–12578, not No. 03CVF–06–6746, is the proper subject of this appeal.

{¶ 20} In its motion to dismiss the instant appeal, appellee asserts that on May 12, 2003, the SLRO issued a decision and, on June 18, 2003, appellants appealed from the SLRO's decision to the common pleas court. That appeal was the subject of case No. 03CVF–06–6746. R.C. 3323.05(F) provides that any party aggrieved by the final order of the reviewing officer who was appointed by the state board of education "may appeal the final order within forty-five days of notification of the order to the court of common pleas of the county in which the child's school district of residence is located, under Chapter 119. of the Revised Code." Because appellants' appeal to the common pleas court was within 45 days of the SLRO's order, they complied with the timing requirements of R.C.

3323.05(F). See, generally, *Painesville v. Lake Cty. Budget Comm.* (1978), 56 Ohio St.2d 282, 285, 10 O.O.3d 411, 383 N.E.2d 896, quoting *Queen City Valves, Inc. v. Peck* (1954), 161 Ohio St. 579, 581, 53 O.O. 430, 120 N.E.2d 310, quoting *Am. Restaurant & Lunch Co. v. Glander* (1946), 147 Ohio St. 147, 150, 34 O.O. 8, 70 N.E.2d 93, ("It is established law in Ohio that ' "where a statute confers the right of appeal, adherence to the conditions thereby imposed is essential to the enjoyment of the right conferred" ' ").

■■ {¶ 21} The term "jurisdiction" "encompasses jurisdiction over the subject matter and over the person." *Pratts,* 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11, citing *State v. Parker,* 95 Ohio St.3d 524, 2002-Ohio-2833, 769 N.E.2d 846, ¶ 22 (Cook, J., dissenting). " 'Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, " * * * the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * *." ' " *Pratts* at ¶ 12, quoting *State ex rel. Pizza v. Rayford* (1992), 62 Ohio St.3d 382, 384, 582 N.E.2d 992, quoting *Sheldon's Lessee v. Newton* (1854), 3 Ohio St. 494, 499.

{¶ 22} In case No. 03CVF–06–6746, the common pleas court determined that (1) R.C. 119.09 applied to appellants' appeal under R.C. 3323.05, (2) the state board of education had not complied with requirements in R.C. 119.09, (3) the period within which appellants were required to appeal had not commenced, and (4) appellants were not barred from filing a timely, proper notice of appeal. Appellee did not appeal from the judgment in case No. 03CVF–06–6746. Absent an appeal by appellee, the common pleas court's rulings in case No. 03CVF–06–6746 implicate the doctrine of collateral estoppel.

■ {¶ 23} "Collateral estoppel 'precludes the relitigation of an issue that has been "actually and necessarily litigated and determined in a prior action." ' " *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.,* 102 Ohio St.3d 283, 2004-Ohio-2947, 809 N.E.2d 1130, at ¶ 10, quoting *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 107, 538 N.E.2d 1058, quoting *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 195, 2 OBR 732, 443 N.E.2d 978. "Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) where the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 183, 637 N.E.2d 917.

{¶ 24} In *Scholler v. Scholler* (1984), 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158, the Supreme Court of Ohio held:

A point of law or a fact which was actually and directly in issue in the former action, and was there passed upon and determined by a court of competent

jurisdiction, may not be drawn in question in a subsequent action between the same parties or their privities. The prior judgment estops a party, or a person in privity with him, from subsequently relitigating the identical issue raised in the prior action.

Id. at paragraph three of the syllabus.

{¶ 25} Here, whether the procedural requirements of R.C. Chapter 119 applied to appellants' appeal under R.C. 3323.05 was a point of law that was actually and directly in issue before the common pleas court in case No. 03CVF–06–6746. Having failed to appeal from the common pleas court's judgment in case No. 03CVF–06–6746 that R.C. Chapter 119 applied to appellants' appeal, appellee is now precluded from challenging this point of law in this appeal.

{¶ 26} Furthermore, having failed to appeal from the common pleas court's judgment in case No. 03CVF–06–6746 that appellants were permitted to file another appeal from the SLRO's decision, appellee also is precluded from challenging that determination in this appeal. See *State ex rel. Pendell v. Adams Cty. Bd. of Elections* (1988), 40 Ohio St.3d 58, 60, 531 N.E.2d 713 ("Where a notice of appeal is not filed within the time prescribed by law, the reviewing court is without jurisdiction to consider issues that should have been raised in the appeal").

{¶ 27} In the instant appeal, in response to the common pleas court's unchallenged determination in case No. 03CVF–06–6746 that appellants were not barred from filing another appeal from the SLRO's decision of May 12, 2003, appellants appealed from the SLRO's decision on November 14, 2003. On July 27, 2004, the common pleas court rendered judgment concerning their appeal of November 14, 2003. From this judgment, appellants appealed to this court on August 26, 2004. See, generally, App.R. 4(A), which provides as follows:

A party shall file the notice of appeal required by App.R. 3 within thirty days of the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three day period in Rule 58(B) of the Ohio Rules of Civil Procedure.

Cf. R.C. 119.12 (providing that an appeal from the common pleas court's judgment under R.C. Chapter 119 "may be taken either by the party or the agency, shall proceed as in the case of appeals in civil actions, and shall be pursuant to the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code"); R.C. 2505.07 ("After the entry of a final order of an administrative officer, agency, board, department, tribunal, commission, or other instrumentality, the period of time within which the appeal shall be perfected, unless otherwise provided by law, is thirty days").

{¶ 28} Because the filing of appellants' present appeal complies with the time requirements of App.R. 4(A), R.C. 2505.07, and 119.12, we conclude that appellants timely perfected the present appeal. We further conclude that subject-matter jurisdiction properly lies and, therefore, appellee's motion to dismiss the instant appeal for lack of jurisdiction is denied.

{¶ 29} In their appeal, appellants assert a sole assignment of error for our consideration:

The trial court committed reversible error in finding that the April 10 IEP addendum was part of [appellants' son's] stay put IEP.

{¶ 30} Appellants do not challenge the common pleas court's ruling concerning the school district's entitlement to records and foundational materials.

{¶ 31} In its cross-appeal, appellee asserts the following cross-assignment of error:

The common pleas court erred in finding that the state level review officer lacked authority to dismiss the special education due process request based on appellants' repeated failures to comply with the impartial hearing officer's order.

{¶ 32} Before addressing the merits of the appeal and cross-appeal, we consider the appropriate standard of appellate review.

{¶ 33} In *Tanya v. Cincinnati Bd. of Edn.* (1995), 100 Ohio App.3d 52, 651 N.E.2d 1373, the First District Court of Appeals explained:

Parents who are dissatisfied with their child's IEP are entitled to an impartial due process hearing and to further appeal to a state educational agency. Either the parents or the school district may appeal the decision of the state agency to a state court or a federal district court. Sections 1415(b)(2), (c) and (e)(2), Title 20, U.S.Code. A state court of common pleas hearing such an appeal must first determine whether the school district has complied with the procedural requirements of IDEA in developing the IEP; and then the court must determine whether the proposed IEP is "reasonably calculated to enable the child to receive educational benefits." *Hendrick Hudson Cent. School Dist. Bd. of Edn. v. Rowley* (1982) 458 U.S. 176, 206–207, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690, 711–713.

Id. at 55, 651 N.E.2d 1373.

{¶ 34} Under R.C. 3323.05(F), any party aggrieved by the final order of the reviewing officer who was appointed by the state board of education "may appeal the final order within forty-five days of notification of the order to the court of common pleas of the county in which the child's school district of residence is located, under Chapter 119. of the Revised Code." See, also, Ohio Adm.Code

3301–51–08(I), effective July 1, 2002 (appeal to courts); former Ohio Adm.Code 3301–51–02(G)(16), effective February 28, 1997 (appeal to courts).

{¶ 35} However, just as R.C. 3323.05(F) provides a right to an aggrieved party to file an administrative appeal in a common pleas court, Section 1415(i)(2), Title 20, U.S.Code, as amended by Section 615 of the Individuals With Disabilities Improvement Act of 2004, P.L. 108–446, 118 Stat. 2647, effective July 1, 2005, also provides a right for an aggrieved party to bring a civil action.[4]

{¶ 36} In *Carnes v. Kemp*, 104 Ohio St.3d 629, 2004-Ohio-7107, 821 N.E.2d 180, the Supreme Court of Ohio instructed:

> In interpreting a statute, a court's principal concern is the legislative intent in enacting the statute. In order to determine that intent, a court must first look at the words of the statute itself. We are also mindful that " 'all statutes which relate to the same general subject matter must be read in pari materia.' " *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 29, 697 N.E.2d 610, quoting *Johnson's Markets, Inc. v. New Carlisle Dept. of Health* (1991), 58 Ohio St.3d 28, 35, 567 N.E.2d 1018. In construing such statutes together, full application must be given to both statutes unless they are irreconcilable.

(Citations omitted.) Id. at ¶ 16.

{¶ 37} Here, the term "under Chapter 119. of the Revised Code" as used in R.C. 3323.05(F) connotes that an appeal from the final order of a state reviewing officer to the common pleas court is subject to provisions contained in R.C. Chapter 119. However, applying *Carnes*, R.C. 3323.05(F) must be considered in conjunction with Section 1415(i)(2), Title 20, U.S.Code.

{¶ 38} Section 1415(i)(2)(A), as amended by the Individuals With Disabilities Improvement Act of 2004, P.L. 108–446, 118 Stat. 2647, provides:

> Any party aggrieved by the findings and decision made under subsection (f) [impartial due process hearing] or (k) [placement in alternative education setting] of this section who does not have the right to an appeal under subsection (g) of this section [appeal to state educational agency], and any party aggrieved by the findings and decision under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

{¶ 39} Section 1415(i)(2)(C), as amended by P.L. 108–446, provides additional requirements. Under Section 1415(i)(2)(C):

---

**4.** The prior version of Section 1415(i)(2), Title 20, U.S.Code, which was in effect in 2002, also provided a right for an aggrieved party to bring a civil action.

In any action brought under this paragraph, the court—

(i) shall receive the records of the administrative proceedings;

(ii) shall hear additional evidence at the request of a party;  and

(iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

{¶ 40} Similarly, Ohio Adm.Code 3301–51–08(I)(2), effective July 1, 2002, provides that when reviewing a decision of the SLRO, a court shall receive the records of the administrative proceedings, hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, the court shall grant relief that it deems appropriate.

{¶ 41} Ohio Adm.Code 3301–51–08(I)(2) is modeled after former Section 1415(i)(2)(B),[5] now Section 1415(i)(2)(C), Title 20, U.S.Code. However, the provisions of Ohio Adm.Code 3301–51–08(I)(2) that direct a reviewing court to hear additional evidence at the request of a party and to grant relief that it deems appropriate based on the preponderance of the evidence seemingly conflict with the standard of review under R.C. 119.12 and R.C. 3323.05(F)'s provision that an aggrieved party may appeal to a common pleas court "under Chapter 119. of the Revised Code."

{¶ 42} Under R.C. 119.12, unless otherwise provided by law, "the court is confined to the record as certified to it by the agency." Furthermore, unless otherwise provided by law, "the court may grant a request for the admission of additional evidence when satisfied that such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency." R.C. 119.12 further provides that a "court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law."

---

5.  {¶ a} In 2002, Section 1415(i)(2), Title 20, U.S.Code, provided:

{¶ b} (A) In general

{¶ c} Any party aggrieved by the findings and decision made under subsection (f) or (k) of this section who does not have the right to an appeal under subsection (g) of this section, and any party aggrieved by the findings and decision under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

{¶ d} (B) Additional requirements

{¶ e} In any action brought under this paragraph, the court—

{¶ f} (i) shall receive the records of the administrative proceedings;

{¶ g} (ii) shall hear additional evidence at the request of a party;  and

{¶ h} (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

{¶ 43} Furthermore, under R.C. Chapter 119, when reviewing the determination of a common pleas court, "[t]he appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. Under R.C. Chapter 119, when reviewing the determination of a common pleas court, an appellate court does, however, have plenary review of purely legal questions. *Chirila v. Ohio State Chiropractic Bd.* (2001), 145 Ohio App.3d 589, 592, 763 N.E.2d 1192, citing *Steinfels v. Ohio Dept. of Commerce, Div. of Securities* (1998), 129 Ohio App.3d 800, 803, 719 N.E.2d 76.

{¶ 44} "When a state statute is modeled on parallel federal statutes, judicial interpretations of those federal provisions may be considered as persuasive authority in determining the meaning of comparable Ohio laws." *State v. Moore* (1994), 99 Ohio App.3d 748, 753, 651 N.E.2d 1319, citing *In re Estate of Morgan* (1981), 65 Ohio St.2d 101, 103, 19 O.O.3d 301, 419 N.E.2d 2.

{¶ 45} Accordingly, applying Moore, we look to federal case law as a guide for establishing the standard of appellate review under R.C. 3323.05(F), Ohio Adm. Code 3301–51–08(I), and the IDEA.

{¶ 46} In *Knable v. Bexley City School Dist.* (C.A.6, 2001), 238 F.3d 755, the Sixth Circuit Court of Appeals discussed the proper standard of review in a federal forum under the IDEA as follows:

The IDEA's provision governing federal court review of state administrative decisions states that: "In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2). The Supreme Court has construed this provision to mean that initial reviewing courts should make "independent decisions" based on the preponderance of the evidence, but also should give "due weight" to the determinations made during the state administrative process. *See* [*Bd. of Edn. v. Rowley* (1982), 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690]. Although reviewing courts must not "simply adopt the state administrative findings without an independent re-examination of the evidence," *Doe v. Metropolitan Nashville Public Schools*, 133 F.3d 384, 387 (6th Cir.1998), neither may they "substitute their own notions of sound educational policy for those of the school authorities which they review," *Doe v. Bd. of Educ. of Tullahoma City Schools*, 9 F.3d 455, 458 (6th Cir.1993) (quoting *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034 [73 L.Ed.2d 690] ).

According to this "modified" *de novo* standard of review, a district court is required to make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings. *See [Tucker v. Calloway Cty. Bd. of Edn.* (C.A.6, 1998), 136 F.3d 495, 503]. This court, in turn, applies a clearly erroneous standard of review to the district court's findings of fact, and a *de novo* standard of review to its conclusions of law. *See id.*

Id. at 763–764.

{¶ 47} Accordingly, applying the standard of review in a federal forum under the IDEA as stated in *Knable,* in this appeal we review the common pleas court's findings of fact under a clearly-erroneous standard and the common pleas court's conclusions of law under a de novo standard. Accord *Cremeans v. Fairland Local School Dist. Bd. of Edn.* (1993), 91 Ohio App.3d 668, 633 N.E.2d 570 (stating that appellate review of judicial determinations in IDEA actions is a hybrid review wherein an appellate court "must accept the common pleas court's findings of fact if they are not clearly erroneous, i.e., based upon some competent credible evidence. Accepting those facts as true, we must independently and without deference to the trial court's conclusion determine as a matter of law, i.e., de novo, whether the proposed IEPs were legally appropriate").

{¶ 48} In their sole assignment of error, appellants assert that the common pleas court erred by finding that the addendum of April 10, 2002, was part of their son's "stay put" IEP. Appellants contend that the IEP that is subject to the "stay put" provision is the last agreed-upon IEP prior to the disputed addendum of April 10, 2002, namely, the IEP as amended by the addendum of March 12, 2002.

{¶ 49} "The party challenging the terms of an IEP bears the burden of proving by a preponderance of the evidence that the IEP is the product of defective procedure or is substantively inappropriate." *Brimmer v. Traverse City Area Pub. Schools* (W.D.Mich.1994), 872 F.Supp. 447, 449, citing *Doe v. Bd. of Edn. of Tullahoma City Schools* (C.A.6, 1993), 9 F.3d 455, 458.

{¶ 50} Section 1415(j), Title 20, U.S.Code requires a state agency that receives assistance under the IDEA to establish procedures that allow a child in an educational placement to remain in that placement during the pendency of proceedings conducted pursuant to Section 1415. Generally, cases dealing with Section 1415(j), Title 20, U.S.Code can be categorized into three classes: (1) cases dealing with disciplinary expulsions of disruptive students under the IDEA, (2) cases dealing with wholesale school closings based on fiscal or other policy considerations determined by the local school board, and (3) cases dealing with adjustments to special educational services provided to an individual student.

*Cavanagh v. Grasmick* (D.Md.1999), 75 F.Supp.2d 446, 467, fn. 27. Here, this case concerns adjustments to special educational services provided to an individual student.

{¶ 51} Former Section 1415(j), which was in effect in 2002, provided:

Except as provided in subsection (k)(7) of this section, during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

See, also, Section 300.514(a), Title 34, C.F.R. (providing that "[e]xcept as provided in § 300.526, during the pendency of any administrative or judicial proceeding regarding a complaint under § 300.507, unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement"); former Ohio Adm.Code 3301–51–02(G)(6)(a) (providing that, unless parents and a school district agree otherwise, a child must remain in his or her current educational placement during the pendency of any impartial due-process hearing or subsequent appeals).

{¶ 52} The term "placement" as used in former Section 1415(j), Title 20, U.S.Code, and Section 300.514(a), Title 34, C.F.R., is not defined in either the United States Code or the Code of Federal Regulations. See, generally, former Section 1401, Title 20, U.S.Code; Section 300.500, Title 34, C.F.R; see, also, *Thomas v. Cincinnati Bd. of Edn.* (C.A.6, 1990), 918 F.2d 618, 625 (observing that under the Education for All Handicapped Children Act, precursor to the IDEA, "[n]either the Act itself nor its accompanying regulations define the term 'placement'"). Likewise, the term "placement" as used in Chapter 3301–51 of the Ohio Administrative Code also was undefined in 2002, when this matter arose, and it remains undefined in the current version of Chapter 3301–51 of the Ohio Administrative Code. See, generally, former Ohio Adm.Code 3301–51–01, effective July 1, 1982; Ohio Adm.Code 3301–51–01, effective July 1, 2002.

{¶ 53} In *Thomas,* construing the Education for All Handicapped Children Act, the Sixth Circuit Court of Appeals stated:

[T]he term "then current educational placement" must be accorded, its plain meaning. Because the term connotes preservation of the status quo, it refers to the operative placement actually functioning at the time the dispute first arises. If an IEP has been implemented, then that program's placement will be the one subject to the stayput provision.

Id. at 625–626. See, also, *Tennessee Dept. of Mental Health & Mental Retardation v. Paul B.* (C.A.6, 1996), 88 F.3d 1466, 1472 (stating that under the IDEA the

"stay put" provision "guarantees consistency in a child's learning environment until a challenge to an existing placement or a new placement has successfully established whether a different alternative placement is necessary").

{¶ 54} The Sixth Circuit Court of Appeals has instructed that "one must identify a detrimental change in the elements of an educational program in order for a chance to qualify for the 'stay put' provision." *Paul B.*, at 1474, citing *Lunceford v. D.C. Bd. of Edn.* (C.A.D.C., 1984), 745 F.2d 1577, 1582. Accord *Sherri A.D. v. Kirby* (C.A.5, 1992), 975 F.2d 193, 206 ("An educational placement, for the purposes of [Education for All Handicapped Children Act], is not changed unless a fundamental change in, or elimination of, a basic element of the educational program has occurred"). See, also, *Cavanagh*, supra, 75 F.Supp.2d at 467–468 (observing that the Third Circuit Court of Appeals' understanding of what constitutes a change in educational placement is generally consistent with the Sixth, Fifth, and D.C. Circuits and that "a fundamental change in, or elimination of a basic element of, the educational program, which adversely affects the child's learning experience in a significant way, is what constitutes a 'change in educational placement' for purposes of the IDEA"); *Brimmer*, supra, 872 F.Supp. at 452 (stating that the term "change in placement" is not defined in the IDEA or its implementing regulations and, considering the remedial purpose of the IDEA, this term should be given "an expansive reading" and also stating that "[u]ltimately, the question whether a proposed change constitutes a change in placement, triggering procedural protections, is necessarily fact-specific").

{¶ 55} Thus, for a chance to qualify for the "stay put" provision, the issue is reduced to whether the addendum of April 10, 2002, constituted a fundamental change in, or elimination of, a basic element of the Stancourts' son's educational program.

{¶ 56} In its decision, the common pleas court found that the significance of the change reflected in the addendum of April 10, 2002, "appears to be a modification of the point reward system used to reinforce positive behavior with the ultimate goal of a complete phase out. The final section of the addendum indicates that if the target behavior is not maintained, the original IEP of January 22, 2002 will be reinstated."

{¶ 57} However, the common pleas court further stated:

While undoubtedly knowledgeable about their son and highly motivated to see him continue to improve in school, the implementation of IDEA was not to give Appellants or any parents the ability to micromanage every decision made by the educational system as it regards a student. This Court does not hold itself out as a trained educator or psychologist and therefore does not find it appropriate at this juncture to determine whether the phase out would be beneficial or detrimental to the child.

{¶ 58} Here, applying *Paul B.*, 88 F.3d 1466, because the common pleas court made no determination concerning whether the change reflected in the addendum of April 10, 2002, implicated a detrimental change in the elements of the Stancourts' son's educational program, or whether the change reflected in that addendum fundamentally changed or eliminated a basic element of their son's educational program, we conclude, as a matter of law, that the common pleas court erred when it found that the IHO's determination concerning the "stay put" issue was correct.

{¶ 59} Moreover, because the IHO made no determination concerning whether the change reflected in the addendum of April 10, 2002, implicated a detrimental change in the elements of the Stancourts' son's educational program, or whether the change reflected in that addendum fundamentally changed or eliminated a basic element of their son's educational program, we conclude, as a matter of law, that the IHO also erred when she determined that the IEP of January 2002, with that addendum, constituted their son's IEP.

{¶ 60} Furthermore, the reliance of the common pleas court upon Ohio Adm.Code 3301–51–01(H), effective July 1, 2002, and 3301–51–05(E)(1)(d), effective July 1, 2002, to support a view that the Stancourts' son's IEP should include the addendum of April 10, 2002, is suspect because in this case that reliance is a retrospective application of a substantive rule.[6]

{¶ 61} Ohio Adm.Code 3301–51–05(E)(1)(d)(i), effective July 1, 2002, for purposes of determining when parental consent is required, defines a "change in placement" as "a change from one option on the continuum of alternative placements to another." Ohio Adm.Code 3301–51–01(H), effective July 1, 2002, upon which the common pleas court relied, defines a "continuum of alternative placements" as:

[T]he availability of different types of educational environments, including, but not limited to

(1) Regular classes;

(2) Supplemental services (such as resource room or itinerant services provided in conjunction with the regular class environment);

(3) Special classes;

(4) Special schools;

(5) Home instruction;

(6) Hospitals; and

---

**6.** In its decision of June 4, 2004, the common pleas court stated: "If the Court looks to the Ohio Administrative Code for guidance, then OAC 3301–51–01(H) and 3301–51–05(E)(1)(d) answer the question of the stay put issue." Id. at 14.

(7) Institutions.

{¶ 62} However, Ohio Adm.Code 3301–51–05(E)(1)(d)(i) became effective after the April 10, 2002 addendum to the Stancourts' son's IEP was adopted by the school district and before appellants sought a due-process hearing in August 2002. See 2001–2002 Ohio Monthly Record 3026. Furthermore, the version of Ohio Adm.Code 3301–51–01(H) upon which the common pleas court relied also became effective after the April 10, 2002 addendum to the Stancourts' son's IEP was adopted by the school district and before appellants sought a due-process hearing in August 2002. Under this revision, the definition of "continuum of alternative placements" was changed.[7] See 2001–2002 Ohio Monthly Record 3018.

{¶ 63} Because Ohio Adm.Code 3301–51–05(E)(1)(d)(i) became effective after the April 10, 2002 addendum to the Stancourts' son's IEP was adopted by the school district and the newer version of Ohio Adm.Code 3301–51–01(H) upon which the common pleas court relied became effective after the April 10, 2002 addendum to the Stancourts' son's IEP was adopted by the school district, the common pleas court's reliance upon Ohio Adm.Code 3301–51–05(E)(1)(d)(i) and the newer version of Ohio Adm.Code 3301–51–01(H) to support its finding that the IHO did not err as to the "stay put" issue is a retrospective application of a substantive administrative rule, which undermines the rule's persuasive value as justification for the court's decision under the facts of this case. Cf. *Huntsman v. Aultman Hosp.*, 160 Ohio App.3d 196, 2005-Ohio-1482, 826 N.E.2d 384, at ¶ 17, quoting *State ex rel. Holdridge v. Indus. Comm.* (1967), 11 Ohio St.2d 175, 40 O.O.2d 162, 228 N.E.2d 621 (" 'in general terms, substantive law is that which creates duties, rights, and obligations, while procedural or remedial law pre-scribes methods or enforcement of rights or obtaining redress' "); *Huntsman*, at ¶ 17, quoting *Rumery v. Myles* (Aug. 8, 1983), Henry App. No. 7–83–1, 1983 WL

---

**7.** {¶ a} Former Ohio Adm.Code 3301–51–01(H), effective July 1, 1982, provided:

{¶ b} "Continuum of alternative placements" means the availability of different types of educational environments, including, but not limited to:

{¶ c} (1) Regular classes;

{¶ d} (2) Supplemental services;

{¶ e} (3) Individual/small group instruction;

{¶ f} (4) Special class/learning center located in:

{¶ g} (a) public school building;

{¶ h} (b) A separate school in the school district;

{¶ i} (c) A separate facility, such as:

{¶ j} (i) A county board of mental retardation and developmental disabilities facility;

{¶ k} (ii) The Ohio state school for the blind or the Ohio school for the deaf; or

{¶ l} (iii) A state institution operated by the Ohio department of mental health, the Ohio department of mental retardation and developmental disabilities, or the Ohio youth commis-sion; or

{¶ m} (5) Home instruction.

7315 (" 'If the statute change is substantive, the constitution prohibits retrospective application, whereas if the statute is procedural, the statute, as amended, would apply to any cause of action before its effective date' ").

{¶ 64} To support its contention that the common pleas court's finding that the IHO's determination about the "stay put" issue was correct, appellee asserts that it provided adequate notice to the Stancourts about the implementation of the April 10, 2002 addendum to their son's IEP. Appellee further claims that under federal law, written parental consent is only required for implementation of an initial IEP. Moreover, because appellants did not challenge the April 10, 2002 addendum until August 2002, appellee argues that appellants' dilatory conduct caused the current dispute about the "stay put" issue. Appellants dispute appellee's claims.

{¶ 65} According to appellants, on April 17, 2002, in a letter dated April 13, 2002, which was sent by certified mail on April 15, 2002, appellants received notice that the April 10, 2002 addendum to their son's IEP would be implemented effective April 15, 2002. Based upon our review of the record, we find evidentiary support for appellants' claim that they did not receive notice until April 17, 2002, that the IEP addendum of April 10, 2002, would become effective April 15, 2002.

{¶ 66} However, despite evidentiary support for appellants' claim that they did not receive timely notice, the common pleas court made no determination concerning whether the notice comports with requirements under the IDEA or, if the notice does not comport with requirements under the IDEA, whether this deviation resulted in substantive harm. See *McLaughlin v. Holt Pub. Schools Bd. of Edn.* (C.A.6, 2003), 320 F.3d 663, 668–669 (stating that in actions filed pursuant to the IDEA a court must determine (1) whether the state has complied with procedural requirements of the Act and (2) whether the IEP developed through the Act's procedures is reasonably calculated to enable the child to receive educational benefits); *Bd. of Edn. of Hendrick Hudson Cent. School Dist., Westchester Cty. v. Rowley* (1982), 458 U.S. 176, 206–207, 102 S.Ct. 3034, 73 L.Ed.2d 690; see, also, *Knable,* supra, 238 F.3d at 764 (stating that only if a court finds that a procedural violation has resulted in substantive harm, thereby constituting a denial of a free appropriate education, may relief be granted).

{¶ 67} Accordingly, for the reasons discussed above, we find that the common pleas court erred, as a matter of law, when it concluded that the decision of the IHO to allow implementation of the April 10, 2002 addendum was correct and should be considered part of the Stancourts' son's IEP. Therefore, as a matter of law, we sustain appellants' sole assignment of error.

{¶ 68} Having sustained appellants' sole assignment of error, we also find that this matter should be remanded to the common pleas court so that it can make

the requisite finding whether the change reflected in the addendum of April 10, 2002, implicated a detrimental change in the elements of the Stancourts' son's IEP, or whether the change reflected in the addendum of April 10, 2002, fundamentally changed or eliminated a basic element of the Stancourts' son's IEP, thereby implicating the "stay put" provision of Section 1415(j), Title 20, U.S.Code. Furthermore, because the evidence suggests that the Stancourts received notice of the implementation of the April 10, 2002 addendum two days after this addendum was implemented, upon remand, as part of its inquiry, the common pleas court should also consider whether the school district complied with procedural requirements under the IDEA and, if not, whether such a deviation resulted in substantive harm.

{¶ 69} In its cross-appeal, appellee asserts that because appellants repeatedly failed to comply with the IHO's orders, the common pleas court erred in finding that the SLRO lacked authority to dismiss appellants' due-process-hearing request.

{¶ 70} Generally speaking, "[a] hearing officer has broad discretion in accepting and rejecting evidence and in conducting the hearing in general." *Crisp v. Scioto Residential Serv., Inc.,* Scioto App. No. 03CA2918, 2004-Ohio-6349, 2004 WL 2698436, at ¶ 14, citing *Owens v. Adm. Ohio Bur. of Emp. Serv.* (1999), 135 Ohio App.3d 217, 220, 733 N.E.2d 628; *Nordonia Hills City School Dist. Bd. of Edn. v. Unemp. Comp. Bd. of Rev.* (1983), 11 Ohio App.3d 189, 190, 11 OBR 283, 463 N.E.2d 1276. Here, however, neither an evidentiary determination nor a ruling about a procedural matter in a hearing is at issue.

{¶ 71} In *Dressler Coal Co. v. Div. of Reclamation, Ohio Dept. of Natural Resources* (1986), 23 Ohio St.3d 131, 23 OBR 287, 491 N.E.2d 1133, the appellant, Dressler Coal Company, argued that a board's sua sponte dismissal of a second appeal, without a hearing, was an unconstitutional deprivation of due process. Id. at 136, 23 OBR 287, 491 N.E.2d 1133. Finding that the doctrine of res judicata dispensed with the requirement of a de novo hearing, the Supreme Court of Ohio did not rule upon appellant's due-process argument. Id.

{¶ 72} In *Fields v. Summit Cty. Executive Branch* (1992), 83 Ohio App.3d 68, 613 N.E.2d 1093, a custodial worker was terminated from his job without a hearing. The custodial worker appealed to the State Personnel Board of Review. The board adopted an administrative-law judge's report, wherein the administrative-law judge concluded that the board lacked jurisdiction over the appeal, and the board dismissed the appeal. The matter was appealed to a common pleas court, which affirmed the decision of the board. The Ninth District Court of Appeals affirmed the judgment of the common pleas court.

{¶ 73} Thus, *Dressler* and *Fields* support the proposition that dismissals of an administrative action without a hearing based upon res judicata and lack of jurisdiction are permissible under Ohio law. In the present case, however, the dismissals by the IHO and SLRO were not premised upon res judicata or lack of jurisdiction.

{¶ 74} Ohio Adm.Code 3301–51–08(F), effective July 1, 2002, outlines the responsibilities of a hearing officer and Ohio Adm.Code 3301–51–08(H)(3), effective July 1, 2002, outlines the duties of an SLRO. Cf. former Ohio Adm.Code 3301–51–02(G)(10) and 3301–51–02(G)(13)(c), effective February 28, 1997.

{¶ 75} Ohio Adm.Code 3301–51–08(F)(3)(d) provides that an impartial hearing officer has the responsibility of "[r]uling on procedural issues presented at the hearing." Paragraph (3)(e) of Ohio Adm.Code 3301–51–08(F) provides that an impartial hearing officer also has the responsibility of "[a]rriving at a written decision based solely on the evidence and testimony presented at the hearing and mailing such decision, by certified mail, to the parties involved and the office for exceptional children." Under Ohio Adm.Code 3301–51–08(H)(3), an SLRO shall examine the entire hearing record, ensure that the procedures at the hearing were consistent with the requirements of law, and, if necessary, seek additional evidence following the procedures outlined in Ohio Adm.Code 3301–51–08(F)(3).

{¶ 76} Neither Ohio Adm.Code 3301–51–08(F) nor Ohio Adm.Code 3301–51–08(H) expressly authorizes a hearing officer to dismiss an action. Cf. R.C. 119.09 (providing that a referee or examiner appointed by a state agency "shall have the same powers and authority in conducting the hearing as is granted to the agency"). See, also, *Vought Industries, Inc. v. Tracy* (1995), 72 Ohio St.3d 261, 265, 648 N.E.2d 1364, quoting *State ex rel. Foster v. Evatt* (1944), 144 Ohio St. 65, 29 O.O. 4, 56 N.E.2d 265, paragraph eight of the syllabus (" 'There is no authority under any rule of statutory construction to add to, enlarge, supply, expand, extend or improve the provisions of the statute to meet a situation not provided for' ").

{¶ 77} However, with its requirements of notice, a hearing, and an opportunity to introduce evidence, a due-process hearing under R.C. 3323.05 and Ohio Adm.Code 3301–51–08 is a quasi-judicial proceeding. See Ohio Adm.Code 3301–51–08(F) (requiring that a hearing officer in an impartial due-process hearing inform the parties of the date, time, and location of the hearing; of a right to present evidence and cross examine; and of a right to compel the attendance of witnesses); see, also, *State ex rel. Fern v. Cincinnati*, 161 Ohio App.3d 804, 2005-Ohio-3168, 832 N.E.2d 106, at ¶ 51 ("The earmarks of a quasi-judicial proceeding include requirements of notice, a hearing, and an opportunity to introduce evidence" [footnote omitted] ).

{¶ 78} As the First District Court of Appeals held in *State ex rel. Methodist Book Concern v. Guckenberger* (1937), 57 Ohio App. 13, 16–17, 9 O.O. 30, 11 N.E.2d 277, affirmed, 133 Ohio St. 27, 9 O.O. 432, 10 N.E.2d 1001:

Judicial power consists in interpreting and applying the law by a duly authorized court to the facts involved in a contention between parties respecting their rights.  * * *

So it is only when there is conferred upon administrative officers the power to hear and determine controversies between the public and individuals which require a hearing resembling a judicial trial that it can be said that quasi judicial power has been conferred.

{¶ 79} Because a due-process hearing is quasi-judicial in nature and consists of a hearing resembling a judicial trial, we conclude that a hearing officer in such a proceeding is vested with implied powers similar to those of a court.

{¶ 80} The United States Supreme Court has stated:

It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed within a Court, because they are necessary to the exercise of all others." *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812); see also *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing *Hudson*).  For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821);  see also *Ex parte Robinson*, 19 Wall. 505, 510, 22 L.Ed. 205 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1388–1389, 8 L.Ed.2d 734 (1962).

*Chambers v. NASCO, Inc.* (1991), 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27.

{¶ 81} Applying the reasoning of *Chambers*, we find that, unless otherwise provided by statute or administrative rule, a hearing officer in a quasi-judicial proceeding under R.C. 3323.05 and Ohio Adm.Code 3301–51–08 has implied authority to manage cases before it so as to achieve the orderly and expeditious disposition of such cases.  Thus, we conclude that the common pleas court erred, as a matter of law, when it concluded that a hearing officer lacked authority to dismiss appellants' appeal.

{¶ 82} Under Ohio law, a court possesses discretionary power to dismiss actions as a sanction for disregarding orders or failing to prosecute.  Civ.R. 41(B)(1);  *Jones v. Hartranft* (1997), 78 Ohio St.3d 368, 371, 678 N.E.2d 530.

{¶ 83} "A dismissal with prejudice * * * is an extremely harsh sanction. It affects not only the suit dismissed but, because it acts as a decision on the merits, also controls questions of fact in other related cases." *Schreiner v. Karson* (1977), 52 Ohio App.2d 219, 222–223, 6 O.O.3d 237, 369 N.E.2d 800. Cf. *Christian v. McFarland* (June 20, 1997), Montgomery App. No. 15984, 1997 WL 337654 (concluding that a trial court's dismissal of an action without prejudice is not a final, appealable order).

{¶ 84} A consideration militating against dismissal with prejudice is the tenet that disposition of a case on its merits is favored in the law. *Jones*, 78 Ohio St.3d at 371, 678 N.E.2d 530; see, also, *Dornbirer v. Paul* (Aug. 19, 1997), Franklin App. No. 96APE11–1560, 1997 WL 476704 ("This court recognizes that disposition of cases on their merits is favored and a dismissal with prejudice is a very harsh sanction"); *Jones* at 372, 678 N.E.2d 530 ("although reviewing courts espouse an ordinary 'abuse of discretion' standard of review for dismissals with prejudice, that standard is actually heightened when reviewing decisions that forever deny a plaintiff a review of a claim's merits").

{¶ 85} In *Schreiner*, the court explained that "[t]he law favors deciding cases on their merits unless the conduct of a party is so negligent, irresponsible, contumacious or dilatory as to provide substantial grounds for a dismissal with prejudice for a failure to prosecute or obey a court order." Id., 52 Ohio App.2d at 223, 6 O.O.3d 237, 369 N.E.2d 800.

{¶ 86} Because the law favors deciding cases on their merits, *Jones*, 78 Ohio St.3d at 371, 678 N.E.2d 530, and lesser sanctions than dismissal with prejudice should be applied when possible, *Schreiner* at 223, 6 O.O.3d 237, 369 N.E.2d 800, we believe a hearing officer in a quasi-judicial proceeding under R.C. 3323.05 and Ohio Adm.Code 3301–51–08 should employ the sanction of dismissal with prejudice only with great circumspection and when the conduct of a party is so negligent, irresponsible, contumacious, or dilatory as to provide substantial grounds for a dismissal with prejudice. See, also, *Jones*, 78 Ohio St.3d at 372, 678 N.E.2d 530 (providing proper factors for consideration in a Civ.R. 41(B)(1) dismissal with prejudice).

{¶ 87} Here, the common pleas court found that "the decision to dismiss, especially with prejudice, for failure to provide discovery of the child's medical and psychological records, is unduly draconian. This is even more true in light of the nature of the administrative proceedings, which should be directed to whether a child is receiving the appropriate instructional components and settings." Under the facts and circumstances of this case, we cannot conclude that the common pleas court's finding constitutes an abuse of discretion. Neither can we conclude that the common pleas court's determination is clearly erroneous. Furthermore, we cannot conclude that the common pleas court's determination

about the hearing officers' decisions to dismiss is inconsistent with the statutory purpose of the IDEA and R.C. Chapter 3323. See, generally, R.C. 3323.02; Section 1400(d), Title 20, U.S.Code; *Austintown Local School Dist. Bd. of Edn.*, 66 Ohio St.3d at 360, 613 N.E.2d 167, citing R.C. 3323.01(D) and (E), 3323.02, 3323.08(C); former Ohio Adm.Code 3301–51–02(E)(1)(d)(iv).

{¶ 88} Therefore, for the foregoing reasons, we overrule appellee's assignment of error on cross-appeal.

{¶ 89} Accordingly, having overruled appellee's motion to dismiss and its cross-assignment of error, and having sustained appellants' sole assignment of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas and remand this cause to that court for further proceedings, in accordance with law, and consistent with this opinion.

> Motion to dismiss appeal denied;
> judgment affirmed in part
> and reversed in part,
> and cause remanded.

BRYANT and SADLER, JJ., concur.