ABT, Appellant,

v.

OHIO EXPOSITIONS COMMISSION, Appellee.

[Cite as *Abt v. Ohio Expositions Comm.* (1996), 110 Ohio App.3d 696.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE11–1522.

Decided May 2, 1996.

*Rose & Dobyns* and *Sharon A. Kornman,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Noelle T. Tsevdos,* Assistant Attorney General, for appellee.

BOWMAN, Judge.

Appellant, Kevin Abt, competed in the 1994 Ohio State Fair in the Junior Livestock Division competition, and his entry, a crossbred steer, was sold in the Divisional Champion Sale. The steer was slaughtered and inspected by the Ohio Department of Agricultural, Division of Meat Inspection. At that time, it was determined that vegetable oil was present in the iliac nodes. Further testing revealed the presence of vegetable oil also in the sublumbar and prefemoral lymph nodes.

On August 18, 1994, Kevin was notified by appellee, the Ohio Expositions Commission, that it intended to disqualify his entry based on a violation of Rule 7

of the Junior Livestock General Rules and Regulations.[1] Rule 7 prohibits tampering with an animal to alter its appearance. The letter further informed Kevin of his right to request a hearing, to have an attorney present at that hearing, to present and cross-examine witnesses, and present other evidence on his behalf. Kevin, through his attorney, requested such a hearing. Kevin, along with six other competitors in the junior livestock competition also charged with similar offenses, participated in the hearing in February and March 1995. Kevin stipulated that vegetable oil was found in his steer.

The hearing officer issued a report in June 1995 and specifically found that neither Kevin nor his father was personally involved with steer tampering. Nonetheless, the hearing officer found Rule 7 was to be interpreted to impose strict liability upon a competitor and recommended that Kevin be disqualified from the 1994 Ohio State Fair, that all money earned from the sale of the steer be forfeited, and the sale money be returned to the buyer. The hearing officer further recommended that Kevin and all immediate family members be barred from competing in the 1995 Ohio State Fair. On June 15, 1995, the commission voted to accept the hearing officer's report and recommendation, except that it modified the penalty to prohibit Kevin and all members of his immediate family from participating in the 1995, 1996 and 1997 Ohio State Fairs.

Kevin filed a notice of appeal, pursuant to R.C. 119.12, in the Franklin County Court of Common Pleas. The commission filed a motion to dismiss on the basis that the trial court lacked subject matter jurisdiction. The trial court granted the motion to dismiss, finding that it lacked subject matter jurisdiction, as the commission was not subject to R.C. Chapter 119. Appellant filed a timely notice of appeal and sets forth the following assignments of error:

"First Assignment of Error

"The court erred in denying appellants [*sic*] right of appeal where the decision by the Ohio Expositions Commission is subject to appellate review.

"Second Assignment of Error

"The court erred in denying appellants [*sic*] right of appeal where Ohio Expositions Commission violated the constitutional guarantee of due process of law.

"Third Assignment of Error

"The court erred in denying appellants [*sic*] right of appeal where the commission is subject to Section 119 jurisdiction by virtue of its licensing activities.

---

1. The rule is set forth in its entirety in the appendix.

"Fourth Assignment of Error

"The court erred in denying appellants [*sic*] right of appeal where the agency conducting the hearing was subject to Section 119."

Appellant's assignments of error are related and will be addressed together. The only issue before the court is whether the trial court erred as a matter of law in finding that it lacked subject matter jurisdiction because the commission is not subject to R.C. Chapter 119.

A common pleas court has power to review proceedings of administrative agencies and officers only to the extent granted by law. Section 4, Article IV, Ohio Constitution, provides:

"(B) The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law."

The common pleas court does not have jurisdiction to review actions of administrative agencies unless granted by R.C. 119.12 or other specific statutory authority. R.C. 119.12 sets forth the scope of administrative appeals and provides:

"Any party adversely affected by any order of an agency issued pursuant to an adjudication denying an applicant admission to an examination, or denying the issuance or renewal of a license or registration of a licensee, or revoking or suspending a license * * * may appeal from the order of the agency * * *.

"Any party adversely affected by any order of an agency issued pursuant to any other adjudication may appeal to the court of common pleas of Franklin county * * *."

An administrative agency becomes subject to R.C. Chapter 119 in one of three ways: (1) the agency is specifically named in R.C. 119.01; (2) the functions of the agency or commission are specifically made subject to R.C. Chapter 119; or (3) the agency is authorized to issue, suspend or revoke licenses. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128.

The statutory definition of an agency in R.C. 119.01(A) does not specifically list the commission as being subject to R.C. Chapter 119, and R.C. Chapter 991 creating the commission does not make it subject to R.C. Chapter 119. Appellant, however, argues that the hearing conducted by the commission should be subject to R.C. Chapter 119 because the Ohio Department of Agriculture was the real party in interest and participated in bringing the action. Therefore, appellant argues, inasmuch as the Department of Agriculture is subject to R.C.

Chapter 119, this proceeding should also be subject to R.C. Chapter 119. We disagree.

The commission is an entity created by statute wholly separate and apart from the Ohio Department of Agriculture and is not subject to the Department of Agriculture.[2] Likewise, the Ohio Department of Agriculture has no statutory authority over management of the Ohio State Fair which is the commission's primary responsibility. The Ohio Department of Agriculture was present at the hearing and was represented by counsel from the Attorney General's office. The extent of the Department of Agriculture's interest was explained by Cheryl Minsterman from the Attorney General's Office as follows:

"Hearing Officer Michael: Let me ask, is there a motion on behalf of the Department of Agriculture to join in these proceedings?

"Ms. Minsterman: I would like to address that. The Department of Agriculture is not a party to this proceeding and not joining in. I am here at counsel table not so much as a representative of the Department of Agriculture as another assistant attorney general assisting Ms. Tsvedos in the presentation of that case. I am not here representing the interest of the Department of Agriculture except when witnesses are testifying."

A review of the transcript shows that Minsterman did not participate in the proceedings by calling or cross-examining witnesses. While the record does reflect that Minsterman moved to quash subpoenas issued at the request of various participants in the hearing, this limited participation by a member of the Attorney General's staff, who appeared on behalf of the Department of Agriculture for the sole purpose of opposing subpoenas issued to its employees, is not sufficient to make the Department of Agriculture a party to the proceedings. The hearing officer also stated his reasons for allowing Minsterman to sit at counsel table and assist the attorney representing the commission as follows:

" * * * Frankly, I have given leeway to the commission on this simply because she's faced with an array of well-prepared and excellent counsel and I thought it was only in interest of fairness that I would allow her hand from another assistant attorney general; so I am not going to hear about that."

Next, appellant argues that the commission is subject to R.C. Chapter 119 because of its licensing function. In support of this argument, appellant argues that, because the commission requires an entry form and payment of a fee in order to exhibit an animal at the Ohio State Fair, it is issuing a license. A license is " 'permission granted by some competent authority to do an act which,

---

2. The Director of the Department of Agriculture is an ex officio member of the commission, but he is only one of thirteen members. R.C. 991.02(A).

without such permission, would be illegal.'" *Home S. & L. Assn. v. Boesch* (1975), 41 Ohio St.2d 115, 70 O.O.2d 204, 322 N.E.2d 878, quoting *State v. Hipp* (1882), 38 Ohio St. 199. Completion of an entry form and payment of a fee to participate in a competition is not a license within the meaning of R.C. Chapter 119.

Last, appellant argues that the commission conducted the hearing and held itself out as being bound by R.C. Chapter 119. The record does not support this argument. The letter sent to Kevin informed him that the commission intended to disqualify him on the basis of tampering with the steer he exhibited at the fair and stated that he had a right to request a hearing, but made no reference to R.C. Chapter 119. Likewise, the letter from Kevin's attorney requesting the hearing did not make any reference to R.C. Chapter 119. In response to various subpoenas filed by the participants in the hearing and a motion to quash filed on behalf of the Department of Agriculture, the hearing officer stated:

"Hearing Officer Michael: In fact, I have tried to provide a 119 type hearing because the commission has agreed that they want to provide a 119 type hearing; now, that is not to say what some court is going to do if you walk in there under opposition from some other agency that claims this isn't a 119 agency, you know, frankly, if I were you I probably would try it."

A fair reading of the statement by the hearing officer only suggests that the format of the hearing provided by the commission was procedurally similar to that provided by R.C. Chapter 119, with the right to have an attorney and present and cross-examine witnesses. The hearing officer's statement does not mean the hearing was held pursuant to R.C. Chapter 119.

■ Assuming *arguendo* that the commission or the hearing officer indicated the proceedings were taking place pursuant to R.C. Chapter 119, an administrative agency cannot exercise authority beyond that granted to it by statute and an agency cannot come within the purview of R.C. Chapter 119 merely by the statements or actions of its officers or employees.

In *Perry Twp. Bd. of Trustees v. Franklin Cty. Bd. of Zoning Appeals* (1983), 10 Ohio App.3d 103, 104, 10 OBR 126, 128, 460 N.E.2d 698, 699, this court stated:

"[I]n the absence of constitutional or statutory authority, there is no inherent right to appeal from the order of an administrative agency."

Thus, while appellant may have a right to judicial review of the actions taken by the Ohio Expositions Commission in banning him from participation in the Ohio State Fair, he does not have a right to an appeal pursuant to R.C. Chapter

119. Therefore, appellant's first, second, third and fourth assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PETREE, P.J., and PEGGY BRYANT, J., concur.

APPENDIX

1994 JUNIOR LIVESTOCK

GENERAL RULES AND REGULATIONS

7. TAMPERING AND/OR MISREPRESENTATION as to breeding, age, ownership and any other irregularity in showing will be considered fraud and deception.

To maintain a high degree of confidence and integrity in the livestock shows, The Ohio Expositions Commission, reserves the right to disqualify any animal fitted in an unethical manner and disqualify the exhibitor and the exhibitors assistants who fitted the animal involved.

Unethical fitting shall include, any cutting or tearing of the hide, cutting or tearing underneath the hide or removal of tissue in any attempt to alter the shape or appearance. It shall also include attempts to disrupt or change normal dental development, dyeing or coloring hair, adding artificial tailheads, switches, polls, hair and heels, as well as any attempt to change the confirmation and degree of firmness, by administration of fluids internally or externally in a liquid or solid state. Transparent grooming materials only may be used.

THE USE OF CLENBUTEROL IS PROHIBITED.

All exhibitors, their immediate family and any other parties involved in the unethical fitting and showing of an animal will be barred from exhibiting or showing at The Ohio State Fair and will forfeit all premiums, prize money and awards won in any junior fair and/or open class divisions.

SHOULD FRAUD OR DECEPTION, AND PROOF, AS DETERMINED BY THE OHIO EXPOSITIONS COMMISSION, BE DISCOVERED AFTER THE ANIMAL OR ANIMALS HAVE BEEN SHOWN AND PRIOR TO THE SALE, such animal(s) shall not be permitted to sell. The animals placing next in line at the show shall move up.

SHOULD VIOLATION BE DISCOVERED AFTER THE SALE, all sale money shall be returned to the buyer and the animal, carcass or carcass value shall be returned to the exhibitor. All placings in show will stand. NO animals will move up.

Any carcass suspected of being tampered with or suspected of containing drugs will be detained until the investigation is complete.

IF THE CARCASS IS CONDEMNED at the packing plant for any reason shall be grounds for disqualification in the on-foot and carcass division of the show. Additionally, all premiums and sale money shall be forfeited and the loss of the animal be incurred by the exhibitor.