OPINION
{¶ 1} Pursuant to App.R. 26(A), appellee/cross-appellant, Worthington City School District Board of Education ("board of education" or "board"), moves this court to reconsider its decision in Stancourt v. Worthington City School Dist. Bd. ofEdn., Franklin App. No. 04AP-870, 2005-Ohio-5702. Specifically, claiming that our application of collateral estoppel inStancourt was error, the board of education seeks reconsideration of our denial of the board's motion to dismiss the Stancourts' appeal and also urges us to grant its previous motion to dismiss the appeal. Appellants/cross-appellees, Warren and Tammy Stancourt (the "Stancourts" or "appellants"), oppose the board's application for reconsideration. For the reasons that follow, we grant the board of education's application for reconsideration and deny the board's motion to dismiss the Stancourts' appeal.
 {¶ 2} App.R. 26 does not include guidelines to be used when determining whether a decision should be reconsidered and changed. Matthews v. Matthews (1982), 5 Ohio App.3d 140, 143. However, in Matthews, this court stated that "[t]he test generally applied is whether the motion for reconsideration calls to the attention of the court an obvious error in its decision or raises an issue for our consideration that was either not considered at all or was not fully considered by us when it should have been." Id. at 143. "An application for reconsideration is not designed for use in instances where a party simply disagrees with the conclusions reached and the logic used by an appellate court."State v. Owens (1997),112 Ohio App.3d 334, 336, dismissed, appeal not allowed,77 Ohio St.3d 1487.
 {¶ 3} In our opinion, we found that the common pleas court's judgment in case No. 03CVF-11-12578 was the proper subject of the appeal. See ¶ 19. We observed that, in its motion to dismiss the appeal, the board of education challenged the common pleas court's rulings in case No. 03CVF-06-6746, not case No. 03CVF-11-12578. Id. We further observed that the board of education failed to appeal from the judgment in case No. 03CVF-06-6746. Id. at ¶ 22.
 {¶ 4} Because the board of education failed to appeal from the judgment in case No. 03CVF-06-6746, we found that the doctrine of collateral estoppel was implicated. Id. at ¶ 22. Absent an appeal from the judgment in common pleas case No. 03CVF-06-6746, we determined that the board of education was precluded from challenging the common pleas court's rulings in case No. 03CVF-06-6746, wherein the common pleas court concluded: (1) that the procedural requirements of R.C. Chapter 119 applied to the Stancourts' appeal under R.C. 3323.05; and (2) that appellants were permitted to file another appeal from the decision of the state level reviewing officer. Id. at ¶ 25, 26. After finding that the Stancourts' appeal complied with the time requirements of App.R. 4(A), R.C. 2505.07, as well as R.C.119.12, we found that they timely perfected their appeal and that subject-matter jurisdiction properly lay. Id. at ¶ 28. We therefore denied the board of education's motion to dismiss the appeal. Id.
 {¶ 5} In its motion for reconsideration, the board of education asserts that our application of collateral estoppel was error. Specifically, the board of education contends that the common pleas court in case No. 03CVF-06-6746 did not have competent jurisdiction as evidenced by its dismissal of the Stancourts' appeal for lack of subject-matter jurisdiction. Because the common pleas court in case No. 03CVF-06-6746 lacked competent jurisdiction, the board asserts that its finding that the Stancourts could file another notice of appeal had no legal or binding effect.
 {¶ 6} To support its argument, the board of education relies upon State ex rel. Brookpark Entertainment, Inc. v. CuyahogaCty. Bd. of Elections (1991), 60 Ohio St.3d 44, rehearing denied, 61 Ohio St.3d 1414, and Alexander Grant Co. v.McAlister (1986), 31 Ohio App.3d 96.
 {¶ 7} In Brookpark Entertainment, Brookpark Entertainment, Inc., d.b.a Crazy Horse Saloon ("Brookpark"), was found to have violated liquor control laws by the Ohio Liquor Control Commission in November 1989. Later, in accordance with R.C. Chapter 4301, the issue of whether Brookpark should be permitted to sell spirituous liquor, mixed beverages, wine, and beer in a precinct was printed on a ballot for use in the 1990 general election.
 {¶ 8} Brookpark later sought declaratory and injunctive relief in federal district court. The district court dismissed Brookpark's action for lack of jurisdiction, finding that the case could be resolved under state law and, therefore, the case did not present a federal question. The district court made other findings, including a finding that petitions filed with the Cuyahoga County Board of Elections were timely and a finding that the local option election was untimely under former R.C.4301.321. Additionally, the district court rejected Brookpark's constitutional claims.
 {¶ 9} Thereafter, the issue challenging Brookpark's liquor permits was submitted to voters at the general election and a majority of votes opposed liquor sales by Brookpark in the relevant precinct. Following the election, Brookpark requested the board of elections not to certify the results of the local option election. To justify its request, Brookpart relied upon the district court's conclusion that the election was untimely. Later, Brookpart sought a writ of prohibition and, alternatively, a writ of mandamus.
 {¶ 10} Before the Supreme Court of Ohio, Brookpark argued that the district court's finding that the local option election was untimely established, and therefore the election was void. Brookpark reasoned that respondents lacked authority to determine and act upon the election results. Relying upon doctrines of res judicata, collateral estoppel, and estoppel by judgment, Brookpark contended that the parties in that case were bound by the district court's judgment.
 {¶ 11} Disagreeing with Brookpark's contention that res judicata, collateral estoppel, and estoppel by judgment applied, the Brookpark court instructed:
Each of these doctrines requires a judgment by a court of competent jurisdiction for its preclusive effect to apply. Here, however, the district court specifically held that it lacked subject matter jurisdiction, and, for that reason, it dismissed Brookpark's case. Thus, even though the district court had first discussed how R.C. 4301.21 and 4301.331 apply to the instant local option election and went on to discuss Broopark's constitutional arguments, the court's judgment is not conclusive of these matters. Accordingly, we hold that neither the district court's factual findings nor its conclusions of law are binding as between these parties.
Id., at 47; see, also, Alexander Grant Co., supra, at 98 (stating that "[a]ny discussion by the Court of Claims regarding issues other than the lack of subject matter jurisdiction for a complaint to contest rejection of a claim pursuant to R.C.1157.07 was advisory only, and is not binding").
 {¶ 12} Here, in case No. 03CVF-06-6746, the court dismissed the Stancourts' appeal because their notice of appeal failed to comply with R.C. 119.12. However, after concluding that dismissal was warranted, the common pleas court further found that the board of education failed to comply with procedural requirements in R.C. 119.09, and, as a consequence, the appeal period had not begun. Therefore, because the appeal period had not begun, the common pleas court concluded that the Stancourts properly could still appeal to the common pleas court. From the court's judgment in case No. 03CVF-06-6746, the board of education did not appeal.
 {¶ 13} Thereafter, in case No. 03CVF-11-12578, the Stancourts again appealed from the decision of a state level reviewing officer to the common pleas court. From the common pleas court's judgment in case No. 03CVF-11-12578, the Stancourts appealed to this court, the board of education cross-appealed, and the board moved to dismiss the Stancourts' appeal. See Stancourt, supra.
 {¶ 14} Construing Brookpark and Alexander Grant Company, we agree with the board of education that, because the common pleas court in case No. 03CVF-06-6746 dismissed the Stancourts' appeal for lack of jurisdiction, the common pleas court's finding that the Stancourts could file another notice of appeal was not conclusive. Furthermore, we agree with the board of education that we erred in Stancourt by finding that collateral estoppel was implicated because, as evidenced by its dismissal of the Stancourts' action in case No. 03CVF-06-6746 for lack of jurisdiction, the common pleas court in that case was not a court of competent jurisdiction. See Thompson v. Wing (1994),70 Ohio St.3d 176, 183 (stating that "[c]ollateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) where the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action"). (Emphasis added.) Therefore, to this limited extent, the board of education's motion for reconsideration is well-taken.
 {¶ 15} Because we erred by relying upon the doctrine of collateral estoppel to deny the board's motion to dismiss the Stancourts' appeal, we now reconsider the board of education's motion to dismiss the appeal.
 {¶ 16} R.C. 3323.05(F) provides:
An opportunity for any party aggrieved by the findings and decision rendered in a hearing under division (E) of this section to appeal within forty-five days of notification of the decision to the state board of education, which shall appoint a reviewing officer who shall review the case and issue a final order. The reviewing officer shall be appointed and shall review the case in accordance with standards and procedures adopted by the board.
Any party aggrieved by the final order of the reviewing officer may appeal the final order within forty-five days of notification of the order to the court of common pleas of the county in which the child's school district of residence is located, under Chapter 119. of the Revised Code.
 {¶ 17} In their motion to dismiss, the board of education claims that procedures in R.C. 119.09 do not apply to special education due process proceedings. Rather, the board contends that administrative regulations contained in Ohio Adm. Code Chapter 3301-51 are controlling.
 {¶ 18} "A basic rule of statutory construction requires that `words in statutes should not be construed to be redundant, nor should any words be ignored.'" D.A.B.E., Inc. v. Toledo-LucasCty. Bd. of Health, 96 Ohio St.3d 250, 2002-Ohio-4712, at ¶ 26, quoting E. Ohio Gas Co. v. Pub. Util. Comm. (1988),39 Ohio St.3d 295, 299. Moreover, "[s]tatutory language `must be construed as a whole and given such interpretation as will give effect to every word and clause in it. No part should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative.'" D.A.B.E., Inc., at ¶ 26, quotingState ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. ofEdn. (1917), 95 Ohio St. 367, 372-373; see, also, Benardini v.Bd. of Edn. For Conneaut Area City School Dist. (1979),58 Ohio St.2d 1, 4, quoting Columbus-Suburban Coach Lines v. Pub. Util.Comm. (1969), 20 Ohio St.2d 125, 127; Wheeling Steel Corp. v.Porterfield (1970), 24 Ohio St.2d 24, 28 (stating that when determining the legislative intent of a statute, "`[i]t is the duty of this court to give effect to the words used [in a statute], not to delete words used or to insert words notused'"). (Emphasis sic.)
 {¶ 19} Here, R.C. 3323.05(F), in relevant part, expressly provides: "Any party aggrieved by the final order of the reviewing officer may appeal the final order within forty-five days of notification of the order to the court of common pleas of the county in which the child's school district of residence is located, under Chapter 119. of the Revised Code." (Emphasis added.)
 {¶ 20} To adopt the board of education's suggestion that special education due process proceedings do not implicate R.C.119.09 impermissibly would require us to ignore "under Chapter 119. of the Revised Code" in R.C. 3323.05(F). See D.A.B.E.,Inc., at ¶ 26.
 {¶ 21} The Supreme Court of Ohio has stated:
In recent years, Ohio courts have devoted many pages to discussions of whether contracts, ballot initiatives, statutes, or even constitutional provisions are ambiguous. * * * However, no clear standard has evolved to determine the level of lucidity necessary for a writing to be unambiguous. Some courts have reasoned that when multiple readings are possible, the provision is ambiguous. * * * The problem with this approach is that it results in courts' reading ambiguities into provisions, which creates confusion and uncertainty. When confronted with allegations of ambiguity, a court is to objectively and thoroughly examine the writing to attempt to ascertain its meaning. * * * Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling.
State v. Porterfield, 106 Ohio St.3d 5, 2005-Ohio-3095, at ¶11.
 {¶ 22} "`The object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the law-making body which enacted it.'" State v.Hairston, 101 Ohio St.3d 308, 2004-Ohio-969, at ¶ 11, quotingSlingluff v. Weaver (1902), 66 Ohio St. 621, paragraph one of the syllabus. The Hairston court also stated:
"But the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly, and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation. The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction. * * *"
Id. at ¶ 12, quoting Slingluff, at paragraph two of the syllabus. See, also, Sears v. Weimer (1944), 143 Ohio St. 312, paragraph five of the syllabus (holding that "[w]here the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted").
 {¶ 23} Therefore, we must first determine whether the language of division (F) of R.C. 3323.05 is plain and unambiguous and conveys a clear and definite meaning. If it is, then we should apply that section, not interpret it. See Hairston, at ¶ 13; Sears, at paragraph five of the syllabus.
 {¶ 24} Here, we cannot conclude that a definitive meaning of "under Chapter 119. of the Revised Code" is elusive and rules for construing ambiguous language should be employed. The use of "under Chapter 119. of the Revised Code" in R.C. 3323.05(F) plainly indicates that an appeal to the common pleas court from a decision of a state level reviewing officer is governed by provisions and procedures of R.C. Chapter 119. See Abt. v. OhioExpositions Comm. (1996), 110 Ohio App.3d 696, 699, citingPlumbers Steamfitters Joint Apprenticeship Commt. v. Ohio Civ.Rights Comm. (1981), 66 Ohio St.2d 192 (stating that "[a]n administrative agency becomes subject to R.C. Chapter 119 in one of three ways: (1) the agency is specifically named in R.C.119.01; (2) the functions of the agency or commission arespecifically made subject to R.C. Chapter 119; or (3) the agency is authorized to issue, suspend or revoke licenses"). (Emphasis added.) Through the inclusion of "under Chapter 119. of the Revised Code" in R.C. 3323.05(F), the General Assembly expressly implicated the provisions and procedures of R.C. Chapter 119.
 {¶ 25} If the General Assembly had intended that R.C. Chapter 119 should not be implicated in special education due process proceedings, as the board suggests, the General Assembly could have omitted "under Chapter 119. of the Revised Code" from R.C.3323.05(F). The General Assembly, however, did not make such an omission. Furthermore, if the General Assembly had intended that procedures contained in Ohio Adm. Code Chapter 3301-51 should apply rather than those in R.C. Chapter 119, as the board of education suggests, the General Assembly could have included such limiting language in R.C. 3323.05(F). The General Assembly, however, did not include any such limiting language.
 {¶ 26} R.C. 119.09, in relevant part, provides that after an agency's order is entered on its journal, "the agency shall serve by certified mail, return receipt requested, upon the party affected thereby, a certified copy of the order and a statement of the time and method by which an appeal may be perfected. A copy of such order shall be mailed to the attorneys or other representatives of record representing the party." Cf. Ohio Adm. Code 3301-51-08(H)(3)(h), effective July 1, 2002 (requiring a state level review officer to "[m]ail, by certified mail, a copy of written or, at the option of the parents, electronic findings of fact and the final decision to the parties * * * not later than thirty days after the receipt of the appeal by the State Board of Education unless specific extensions have been granted by the state level review officer upon request by either party"); Section 300.511(b)(2), Title 34, C.F.R. (requiring a state educational agency to ensure that not later than 30 days after the receipt of a request for a review a copy of the decision is mailed to each of the parties).
 {¶ 27} In Sun Refining Marketing Co. v. Brennan (1987),31 Ohio St.3d 306, the Supreme Court of Ohio held that "[t]he fifteen-day appeal period provided in R.C. 119.12 does not commence to run until the agency whose order is being appealed fully complies with the procedural requirements set forth in R.C. 119.09." Id. at 309. The Sun Refining court further stated that "[w]ere we to hold otherwise, it is conceivable that an affected party could lose its right to appeal before receiving notice of an agency's decision, and thereby be deprived of its due process rights." Id.
 {¶ 28} Here, applying Sun Refining and R.C. 3323.05(F), we conclude that the 45-day appeal period provided in R.C.3323.05(F) does not commence to run until the state level reviewing officer complies with procedural requirements set forth in R.C. 119.09.
 {¶ 29} The board of education argues that the certified mail provision is directory and not meant to restrict jurisdiction. See, e.g., State ex rel. Ragozine v. Shaker, 96 Ohio St.3d 201,2002-Ohio-3992, at ¶ 13, quoting State ex rel. Jones v. Farrar
(1946), 146 Ohio St. 467, paragraph three of the syllabus (stating that "`[a]s a general rule, a statute providing a time for performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure'"). Such an argument is not persuasive.
 {¶ 30} In In the Matter of Wendt-Bristol Diagnostics (June 13, 1989), Franklin App. No. 88AP-1049, construing SunRefining, this court observed:
* * * [T]he certified mail requirement not only served to prove the date the alleged reviewability determination letter was mailed, but also served to alert appellee that the letter received was indeed appellant's determination on the need for reviewability. Just as the Supreme Court in Sun Refining found due process necessitated full compliance with procedural requirements, we are compelled to conclude that, under the facts and circumstances of this case, due process similarly requires compliance with the applicable procedural requirements.
Id.
 {¶ 31} Similarly, here the certified mail requirement not only served to prove the date that the state level reviewing officer's decision was mailed, but it also served to alert the Stancourts that the mailing was indeed the state level reviewing officer's decision. Just as the Supreme Court of Ohio in SunRefining found due process necessitated full compliance with procedural requirements, we conclude that due process here requires compliance with the applicable procedural requirements.
 {¶ 32} Accordingly, we conclude that compliance with R.C.119.09 involves a statutory requirement that is essential to the special education due process proceedings.
 {¶ 33} In this case, the parties agree that following dismissal of the Stancourts' appeal in case No. 03CVF-06-6746, the administrative agency served upon the Stancourts a copy of the state level reviewing officer's decision by certified mail. According to the record, the common pleas court in case No. 03CVF-06-6746 issued a decision on October 31, 2003, and rendered final judgment on November 19, 2003. On November 14, 2003, the Stancourts filed their notice of appeal from the state level reviewing officer's decision in case No. 03CVF-11-12578. Thus, assuming that the administrative agency served the Stancourts by certified mail after the common pleas court in case No. 03CVF-06-6746 issued its decision, we conclude that the Stancourts appealed within 45 days as required by R.C.3323.05(F).
 {¶ 34} Furthermore, because in Stancourt the Stancourts complied with time requirements in R.C. 119.12, as well as App.R. 4(A) and R.C. 2505.07 in their appeal to this court, see our opinion, at ¶ 27-28, we find that our conclusion where jurisdiction properly lay was correct.
 {¶ 35} Therefore, upon reconsideration and for the reasons stated above, the board of education's motion to dismiss the Stancourts' appeal is not well-taken.
 {¶ 36} Accordingly, because the board of education calls attention to an obvious error in our decision, namely our improper application of collateral estoppel, we therefore grant the board of education's application for reconsideration. However, upon reconsideration and for the reasons stated above, the board of education's motion to dismiss the appeal is denied. Finally, (1) having found no prejudicial error in our decision after reconsidering our disposition of the board's motion to dismiss the Stancourts' appeal, (2) having already overruled appellee's cross-assignment of error, and (3) having already sustained appellants' sole assignment of error, the judgment of the Franklin County Court of Common Pleas is affirmed in part, reversed in part, and for the reasons stated in our opinion, the matter is remanded to that court for further proceedings, in accordance with law, and consistent with our opinion.
Application for reconsideration granted; motion to dismissappeal denied; judgment affirmed in part, reversed in part, andcause remanded.
Bryant and Sadler, JJ., concur.