[Cite as *Cozad v. Ohio Elections Comm.*, 2023-Ohio-839.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Dr. Douglas Cozad, | : | |
| Appellant-Appellant, | : | No. 22AP-312 |
| | | (C.P.C. No. 20CV0032) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Elections Commission, | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on March 16, 2023

**On brief:** *Subashi, Wildermuth & Justice, Nicholas E. Subashi*, and *Zachary J. Cloutier* for appellant.

**On brief:** *Dave Yost*, Attorney General, *Julie M. Pfeiffer*, and *Andrew D. McCartney* for appellee.

APPEAL from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} Appellant, Dr. Douglas Cozad, appeals the decision of the Franklin County Court of Common Pleas, which dismissed Cozad's administrative appeal from a decision by appellee, the Ohio Elections Commission ("the commission"), denying his motion for a protective order. Because the trial court correctly determined that it lacked subject-matter jurisdiction to hear Cozad's appeal, we affirm the trial court's judgment.

I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} In September 2019, John M. Stafford, an elector and resident of the Bellbrook-Sugarcreek School District, filed with the commission a complaint against Citizens for Bellbrook-Sugarcreek Schools—a political action committee formed to promote the passage of a tax levy on the May 2019 primary and special elections ballot—its treasurer,

Andy Lowrey, and its campaign chair, Cozad, who is also the Superintendent of the Bellbrook-Sugarcreek School District. Stafford alleged that the political action committee had violated Ohio election laws by failing to disclose in its campaign finance filings the value of in-kind contributions it had received from the school district.

{¶ 3} Upon receipt of a complaint, the commission or a panel of the commission's members performs a preliminary review of the pleadings, evidence, and motions to determine jurisdiction, sufficiency of the complaint, and whether probable cause exists for the full commission to determine whether a violation of Ohio election law has occurred. Ohio Adm.Code 3517-1-11(A). Here, following its preliminary review of Stafford's complaint, the commission concluded that there was probable cause, and scheduled the matter for a hearing.

{¶ 4} In December 2019, several months before the scheduled hearing on Stafford's complaint, Cozad filed with the commission a motion for a protective order, pursuant to Civ.R. 26(C). Ostensibly to protect himself and the other respondents from annoyance, embarrassment, and oppression, Cozad requested an order broadly prohibiting Stafford from:

> (1.) Issuing any public comments about this action in any form whatsoever, including, but not limited to social media (e.g. Facebook);
>
> (2.) Disseminating, disclosing or commenting to the public any information, documents or other things gleaned through discovery or from subpoenas issued to third-parties;
>
> (3.) Disseminating, disclosing or commenting to the public any information, documents or testimony from any depositions; and
>
> (4.) Directly or indirectly attempting to influence the Ohio Elections Commission or public opinion regarding this action through any public comments, including, but not limited to, the use of social media (e.g. Facebook).

(Jan. 30, 2020 Record of Proceedings at 0F022-L23, Ex. A.) Cozad attached to his motion copies of posts from a Facebook page, allegedly run by Stafford, for "Vote NO On Bellbrook-Sugarcreek Schools Levy." (Record of Proceedings at 0F022-L34, Ex. 1.) The attached posts contain criticisms of the school district, its officials and attorneys (who now represent

Cozad), and the levy.  Cozad argued that Stafford had used the Facebook page to influence public opinion and the commission's decision-making process.

{¶ 5}  The commission's staff attorney, who has authority pursuant to Ohio Adm.Code 3517-1-09(B) to handle discovery disputes arising in matters before the commission, issued a letter denying Cozad's motion for a protective order.  In the letter, the staff attorney stated: "The Commission cannot and in my experience does not consider matters that are not presented to it at the hearing before the Commission.  The Commission will not consider information released in any other medium or format outside the hearing that might impact the Commission's consideration of that evidence."  (Record of Proceedings at 0F022-L64, Ex. B.)  The staff attorney cautioned the parties and their attorneys to "refrain from any activity that will keep this Commission from having a proper and unbiased consideration of the evidence in this case."  *Id.*  Finally, the staff attorney stated that the commission would not impede rights guaranteed to Stafford by the First Amendment to the United States Constitution and Article I, Section 11 of the Ohio Constitution.  In other words, although the staff attorney declined to restrict Stafford's ability to speak or share information about the case, he assured the parties that statements made outside the confines of the hearing would not affect the commission's consideration.

{¶ 6}  Cozad filed a notice of appeal to the Franklin County Court of Common Pleas from the denial of his motion for a protective order.  The commission responded by moving the court to dismiss Cozad's appeal for lack of jurisdiction and for failure to state a claim upon which relief could be granted.  The commission argued that the trial court lacked subject-matter jurisdiction to consider Cozad's appeal because the denial of Cozad's motion for a protective order was an interlocutory order and not a "final determination" from which an administrative appeal could be taken. (Feb. 13, 2020 Mot. to Dismiss Appeal at 1.)  The trial court agreed with the commission and dismissed Cozad's appeal for lack of subject-matter jurisdiction.

{¶ 7}  Cozad filed a timely notice of appeal to this court and, as his sole assignment of error, argues, "The common pleas court erred in granting the commission's motion to dismiss Dr. Cozad's administrative appeal." (Appellant's Brief at i.)  Cozad argues that the trial court erred in dismissing his appeal because he had a statutory right to appeal, the

denial of his motion for a protective order was a final appealable order, and his appeal stated a claim upon which relief could be granted.

## II. STANDARD OF REVIEW

{¶ 8} We review de novo a trial court's decision granting a motion to dismiss for lack of subject-matter jurisdiction. *Brady v. Youngstown State Univ.*, 10th Dist. No. 20AP-444, 2022-Ohio-353, ¶ 12; *Ashenhurst v. Ohio State Elections Comm.*, 10th Dist. No. 15AP-184, 2016-Ohio-777, ¶ 9.

## III. ANALYSIS

{¶ 9} There is no inherent right to appeal a decision of an administrative agency. *Midwest Fireworks Mfg. Co. v. Deerfield Twp. Bd. of Zoning Appeals*, 91 Ohio St.3d 174, 177 (2001). A common pleas court has only " 'such powers of review of proceedings of administrative officers and agencies as may be provided by law.' " *Clifton Care Ctr. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-709, 2013-Ohio-2742, ¶ 9, quoting Article IV, Section 4, Ohio Constitution; *see also* R.C. 2505.03(A) (providing for appellate review of "the final order of any administrative officer, agency, board, department, tribunal, commission, or instrumentality" only "when provided by law."). Accordingly, a common pleas court's jurisdiction over an administrative appeal depends on whether R.C. 119.12 or another statutory provision has conferred it with jurisdiction. *Ikemefuna Nkanginieme v. Ohio Dept. of Medicaid*, 10th Dist. No. 14AP-596, 2015-Ohio-656, ¶ 15, citing *Abt v. Ohio Expositions Comm.*, 110 Ohio App.3d 696, 699 (10th Dist.1996).

{¶ 10} Appeals from decisions of the elections commission are governed by R.C. 3517.157(D) and 119.12. *Gwinn v. Ohio Elections Comm.*, 187 Ohio App.3d 742, 2010-Ohio-1587, ¶ 10 (10th Dist.). R.C. 3517.157(D) states, "A party adversely affected by a final determination of the commission may appeal from the determination under section 119.12 of the Revised Code." R.C. 119.12(B), in turn, permits a party adversely affected by an agency order "issued pursuant to [an] * * * adjudication" to appeal to the Franklin County Court of Common Pleas. R.C. 119.01(D) defines "adjudication" as "the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person." The crux of this case then is whether the denial of Cozad's motion for a protective order was a "final determination" of the commission "issued pursuant to [an] * * * adjudication." R.C. 3517.157(D); R.C. 119.12(B).

{¶ 11} This court has previously considered what types of commission orders give rise to a right to appeal under R.C. 3517.157(D). In *Billis v. Ohio Elections Comm.*, 146 Ohio App.3d 360, 364 (10th Dist.2001), for example, we held that the commission's dismissal of an action for lack of probable cause during its preliminary review was not an adjudication and therefore did not give rise to a right to appeal. We cited with approval a case in which we held that an order of the Ohio Real Estate Commission, determining not to proceed further on a complaint, was not an adjudication because it " 'did not determine the rights, duties, privileges, or legal relationships of anyone.' " *Id.*, quoting *Goldberger v. Weiler*, 10th Dist. No. 98AP-1097, 1999 Ohio App. LEXIS 3528, *5 (Aug. 3, 1999). This court stated in *Goldberger*, "The commission's determination not to proceed further with appellant's complaint is akin to the decision of a county prosecutor not to seek an indictment based on a citizen's report of a crime," a decision that is "executive[,] rather than * * * adjudicative." *Id.* at *5, citing *Boieru v. State Emp. Relations Bd.*, 54 Ohio App.3d 23, 27 (8th Dist.1988). We held that the commission's dismissal in *Billis*, like the dismissal at issue in *Goldberger*, "was merely an executive decision and not an adjudication from which an appeal lies." *Billis* at 364.

{¶ 12} The year after *Billis*, we again considered whether certain commission orders were subject to appeal under R.C. 3517.157(D). *See Common Cause/Ohio v. Ohio Elections Comm.*, 150 Ohio App.3d 31, 2002-Ohio-5965 (10th Dist.). *Common Cause/Ohio* was a consolidated appeal arising from the commission's orders in three separate actions. In the first action, a panel of the commission dismissed the complaint at the preliminary-review stage for lack of probable cause. The second and third actions were submitted to the full commission following a finding of probable cause during the preliminary review, but before any hearings were held the commission granted a motion for judgment on the pleadings in one case and a motion for summary judgment in the other, both in favor of the respondents. The complainant citizen groups appealed all three decisions to the Franklin County Court of Common Pleas. Relying in part on *Billis* to conclude that the commission's decisions were not appealable, the trial court dismissed the appeals for lack of jurisdiction. *Id.* at ¶ 4.

{¶ 13} As to the first action at issue in *Common Cause/Ohio*, which the commission had dismissed for lack of probable cause at the preliminary-review stage, this court affirmed the trial court's dismissal of the appeal for lack of jurisdiction, based on *Billis*. *Id.*

at ¶ 11. But as to the second and third actions, this court reversed the trial court's dismissal. *Id*. at ¶ 20. We distinguished *Billis*, stating that, by the time the dispositive motions were filed, the commission "had moved beyond its executive function, and was acting in its adjudicative role." *Id*. at ¶ 12. We then considered specifically whether the commission's decisions granting judgment on the pleadings and summary judgment were " 'adjudications' giving rise to a right of appeal." *Id*. at ¶ 14. To answer that question, we considered how those types of judgment are treated in civil practice:

> It is axiomatic in civil practice that the decision of a trial court granting a motion on the pleadings or a motion for summary judgment operates as an adjudication, resulting in a final appealable order. We find nothing in R.C. Chapters 119 or 3517 which would indicate that the granting of such motions by an administrative body does not operate as a final determination of the action, so long as, in doing so, the administrative body is acting in its adjudicative role.

*Id*. We emphasized that the determination of the issue presented in the motions—the appropriate legal standard to be applied—was not a preliminary matter, such as jurisdiction, sufficiency of the complaint, and probable cause, but was a legal question "at the heart of the action" before the commission. *Id*. at ¶ 18. We stated that "a disposal of an action on this basis must be viewed as a judgment on the merits." *Id*. We therefore concluded that the commission's decisions as to the second and third actions in *Common Cause/Ohio* were "final determinations" which adversely affected the appellants, giving them the right to appeal. *Id*. at ¶ 20.

{¶ 14} Cozad aptly notes that this court has differentiated between the commission's executive and adjudicative roles and has held that the right to appeal under R.C. 3517.157(D) arises only in response to an adjudicative order. *See id*. at ¶ 10, citing *Billis*, 146 Ohio App.3d 360. But contrary to Cozad's suggestion, this court has never held that *every* action taken by the commission after completion of its preliminary review constitutes an adjudication and a final determination that gives rise to a right to appeal. Indeed, the analysis in *Common Cause/Ohio* plainly reveals the flaw in Cozad's suggestion.

{¶ 15} If every act taken by the commission after its preliminary review of a complaint constitutes an adjudication and a final determination, then the timing of the commission's rulings on the motions for judgment on the pleadings and for summary

judgment in *Common Cause/Ohio* would have been determinative of whether the appellants had a right to appeal. Yet our determination that the commission had moved from its executive role into an adjudicative role by the time those motions had been filed was only the first step in our analysis. It was only after stating that the commission was acting in its adjudicative role that we considered whether the commission's decisions were adjudications and final determinations. *See id.* at ¶ 12, ¶ 14. We recognized that, in civil practice, judgments on the pleadings and summary judgments operate as adjudications, resulting in final appealable orders. *Id.* at ¶ 14. We then analogized that a grant of judgment on the pleadings or summary judgment by the commission, while acting in its adjudicative role, is a "final determination" for purposes of R.C. 3517.157(D). *Id.* Those considerations would have been wholly unnecessary had the commission's finding of probable cause upon its preliminary review been sufficient to transform all subsequent actions by the commission into appealable final determinations.

{¶ 16} *Common Cause/Ohio* held that, when an administrative agency acts in its adjudicative role to grant a dispositive motion, the agency's order is a "final determination" for purposes of R.C. 3517.157(D). *Id.* The decisions on the motions for judgment on the pleadings and summary judgment in *Common Cause/Ohio* were final judgments on the merits, which completely adjudicated and resolved the complaints before the commission. The denial of Cozad's motion for a protective order, on the other hand, did not decide the merits or otherwise dispose of any claim presented in Stafford's complaint. The staff attorney simply refused to restrain Stafford's speech by prohibiting him from commenting about the pending action or disclosing information obtained through the discovery process.

{¶ 17} Orders concerning discovery "have long been considered interlocutory" and neither final nor appealable. *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 438 (1994); *Nami v. Nami*, 10th Dist. No. 17AP-265, 2017-Ohio-8330, ¶ 18. An interlocutory order is one "that relates to some intermediate matter in the case." *Black's Law Dictionary* 1123 (7th Ed.1999). An order that "does not determine the action, but instead establishes only a preliminary matter" is not a final order. *Ohio Historical Soc. v. State Emp. Relations Bd.*, 48 Ohio St.3d 45, 47 (1990). An interlocutory order remains subject to revision while the case remains pending. *Nami* at ¶ 18, citing *State v. Colon*, 8th Dist. No. 103150, 2016-Ohio-707, ¶ 10; Civ.R. 54(B). Because the denial of Cozad's motion for a protective order

was an interlocutory order that did not finally determine any claim before the commission, it was not a "final determination," subject to appeal under R.C. 3517.157(D).

{¶ 18} Finally, we reject Cozad's related argument that the commission's denial of his motion for a protective order qualifies as a "final order," as defined in R.C. 2505.02(B). As stated above, R.C. 2505.03(A) authorizes a common pleas court to review "the final order of any * * * commission" when such authority is otherwise "provided by law." The Supreme Court of Ohio has recognized that the requirement of a "final order" under R.C. 2505.03(A) applies to various statutory schemes that permit appeals of orders to the common pleas courts, including appeals pursuant to R.C. 119.12. *Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professionals Guild of Ohio*, 46 Ohio St.3d 147, 152 (1989) (holding that orders by the State Employment Relations Board must comply with R.C. 2505.02 to be appealable under R.C. 119.12.).

{¶ 19} Under the current version of R.C. 2505.02, a discovery order may constitute a final and appealable order if it falls within one of the categories of "final order" set out in R.C. 2505.02(B). *State ex rel. Thomas v. McGinty*, 164 Ohio St.3d 167, 2020-Ohio-5452, ¶ 43. For example, R.C. 2505.02(B)(4) defines as final orders certain orders granting or denying a provisional remedy, including the "discovery of privileged matter." R.C. 2505.02(A)(3). As Cozad's motion for a protective order did not seek to prevent the discovery of privileged matter, Cozad instead maintains that the denial of his motion for a protective order was a "final order" under R.C. 2505.02(B)(2), which states, "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is * * * [a]n order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment." We disagree.

{¶ 20} A substantial right is "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1). For purposes of R.C. 2505.02(B)(2), though, an order *affects* a substantial right "only if 'in the absence of immediate review of the order [the appellant] will be denied effective relief in the future.' " *Thomasson v. Thomasson*, 153 Ohio St.3d 398, 2018-Ohio-2417, ¶ 10, quoting *Bell v. Mt. Sinai Med. Ctr.*, 67 Ohio St.3d 60, 63 (1993).

{¶ 21} Denying Cozad the right to immediately appeal the commission's denial of his motion for a protective order will not effectively deny Cozad relief in the future. Because its denial of Cozad's request for a broad order prohibiting Stafford from speaking about this case was an interlocutory order, the commission may revisit its ruling at any time before final judgment. While both Cozad's motion for a protective order and his brief filed with this court cite caselaw suggesting that a tribunal has authority to restrain dissemination of information provided in discovery in advance of litigation, *see, e.g.*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), the order that Cozad requested was not limited to maintaining confidentiality of discovery materials. Instead, Cozad asked the court to broadly prohibit Stafford "from issuing any public comments about this action in any form whatsoever." (Record of Proceedings at 0F022-L31.) Should Cozad make a more limited request, the commission would be free to grant it should it find it well-taken. There is also nothing to prevent Cozad from pursuing other avenues of relief. For example, should he believe that Stafford's comments cross the line into defamation, there are civil remedies available to address those concerns. *See Wilhelm-Kissinger v. Kissinger*, 129 Ohio St.3d 90, 2011-Ohio-2317, ¶ 9-11 (holding that denial of a motion to disqualify opposing counsel did not require immediate appeal to protect a substantial right because the "order may be revisited throughout trial, and the party seeking disqualification may pursue other avenues, such as disciplinary proceedings, to address any improprieties that occur."). Accordingly, the denial of Cozad's motion for a protective order did not affect a substantial right and is not a "final order" under R.C. 2505.02(B)(2).

{¶ 22} Having concluded that the trial court appropriately dismissed Cozad's appeal for lack of jurisdiction, we need not address Cozad's remaining contention that his appeal stated a claim upon which relief can be granted.

IV.  **CONCLUSION**

{¶ 23} For these reasons, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER and EDELSTEIN, JJ., concur.

————————————